FILED

10/17/2017

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 17-0181

DA 17-0181

IN THE SUPREME COURT OF THE STATE OF MONTANA

2017 MT 252

IN THE MATTER OF:

M.C.,

A Youth in Need of Care.

APPEAL FROM: District Court of the Twentieth Judicial District,
In and For the County of Lake, Cause No. DN 15-15
Honorable Deborah Kim Christopher, Presiding Judge

COUNSEL OF RECORD:

For Appellant:

Katy Stack, Attorney at Law, Missoula, Montana

For Appellee:

Timothy C. Fox, Montana Attorney General, C. Mark Fowler, Assistant
Attorney General, Helena, Montana

Stephen Eschenbacher, Lake County Attorney, Benjamin Ancieaux,
Deputy County Attorney, Polson, Montana

Submitted on Briefs: September 27, 2017

Decided: October 17, 2017

Filed:

_____
Clerk

Justice Laurie McKinnon delivered the Opinion of the Court.

¶1     J.C. (Mother) appeals an order of the Twentieth Judicial District Court, Lake County, terminating her parental rights to her minor child, M.C.  Mother raises three issues, however only one issue is properly before this Court for review.  We affirm and address the following issue:

> *Did the District Court properly admit Mother's psychological evaluation at the termination hearing?*

## FACTUAL AND PROCEDURAL BACKGROUND

¶2     In March 2015, the Department of Public Health and Human Services (the Department), filed a Petition for Emergency Protective Services (EPS), Adjudication of Child as Youth in Need of Care, and Temporary Legal Custody (TLC).  The District Court granted EPS and Mother subsequently stipulated to TLC.  The Department prepared a treatment plan for Mother, which she signed and the District Court approved and ordered on May 21, 2015.

¶3     As part of her treatment plan, Mother agreed to undergo a psychological evaluation:

> **Psychological Evaluation.**  To identify all of Mother's mental health issues and narrowly tailor future treatment, Mother will submit to a psychological evaluation with a professional approved by CPS.  Mother will follow recommendations made by the professional, including any recommendations that may lead to a higher level of care, including in-patient or out-patient mental health treatment and/or anger management classes.

(Emphasis in original).    The treatment plan specifically stated the psychological evaluation's two purposes:  (1) to identify Mother's mental health issues; and (2) to

narrowly tailor future treatment. Mother agreed to follow the evaluation's recommendations in working towards reunification with M.C. when she signed the treatment plan.

¶4 Dr. Theresa Reed (Dr. Reed), a Licensed Clinical Psychologist, performed Mother's psychological evaluation on September 3, 2015. The evaluation consisted of various sections, including background information, family and personal health history, legal history, mental status examination, test results, and conclusions and recommendations.

¶5 The Department and Mother worked together for over a year to reunify M.C. with Mother. The reunification efforts were unsuccessful, however, and in November 2016, the Department filed a petition to terminate Mother's parental rights. The District Court held a termination hearing in January 2017, at which time the court issued oral findings of fact and conclusions of law immediately terminating Mother's parental rights.

¶6 A supervisor for Child Protective Services, Jeanne Frolander (Frolander), testified for the Department at the termination hearing. During its direct examination of Frolander, the Department moved for admission of Mother's September 3, 2015, psychological evaluation performed by Dr. Reed. Mother's counsel objected to the evaluation's admission on grounds that it was inadmissible hearsay. The Department contended the evaluation was admissible under the business records exception to the hearsay rule. After additional dialogue between the parties and the Judge, the District Court admitted the psychological evaluation as a business record but limited its use to the recommendations made therein. Mother appeals the District Court's evidentiary ruling,

arguing the District Court improperly admitted the psychological evaluation into evidence.

**STANDARD OF REVIEW**

¶7     We review a district court's evidentiary rulings for abuse of discretion and "will not reverse evidentiary rulings absent a manifest abuse of discretion." *In re A.N.*, 2000 MT 35, ¶ 22, 298 Mont. 237, 995 P.2d 427 (quoting *In re Inquiry into M.M.*, 274 Mont. 166, 169, 906 P.2d 675, 677 (1995)).

**DISCUSSION**

¶8     *Did the District Court properly admit Mother's psychological evaluation at the termination hearing?*

¶9     A natural parent's "right to the care and custody of a child is a fundamental liberty interest." *In re A.D.B.*, 2013 MT 167, ¶ 42, 370 Mont. 422, 305 P.3d 739. Therefore, an individual's parental rights are protected and, in the case of an abuse and neglect proceeding, may only be terminated pursuant to strict statutory guidelines. *See* §§ 41-3-601 to 41-3-612, MCA. A court may order termination of the parent-child relationship if "the child is an adjudicated youth in need of care" and (1) "an appropriate treatment plan that has been approved by the court has not been complied with by the parents or has not been successful" and (2) "the conduct or condition of the parents rendering them unfit is unlikely to change within a reasonable time." Section 41-3-609(1)(f)(i)-(ii), MCA. *See also In re A.D.B.*, ¶ 42; *In re D.B.*, 2012 MT 231, ¶ 19, 366 Mont. 392, 288 P.3d 160.

4

¶10 In "determining whether the conduct or condition of the parents is unlikely to change within a reasonable time" the court must find that continuing the parent-child relationship "will likely result in continued abuse or neglect or that the conduct or the condition of the parents renders the parents unfit, unable, or unwilling to give the child adequate parental care." Section 41-3-609(2), MCA. To make such a determination, the court is required to consider certain factors, including "emotional illness, mental illness, or mental deficiency of the parent . . . ." Section 41-3-609(2)(a), MCA. Thus, a court is statutorily obligated to examine a parent's mental health when deciding whether or not to terminate parental rights.

¶11 At the onset of an abuse and neglect proceeding, a petition is filed in district court pursuant to § 41-3-422, MCA, and the court must conduct a show cause hearing within 20 days. Section 41-3-432, MCA. Either at the show cause hearing or pursuant to § 41-3-437(1), MCA, the court will adjudicate a child as a youth in need of care if necessary. The court's "[a]djudication must determine the nature of the abuse and neglect and establish facts that resulted in state intervention and upon which disposition, case work, court review, and possible termination are based." Section 41-3-437(2), MCA. The court is statutorily authorized to "order . . . examinations, evaluations, or counseling of the child or parents in preparation for the disposition hearing . . . ." Section 41-3-437(7)(b)(ii), MCA. Additionally, a parent's treatment plan may require the parent obtain "medical or psychiatric diagnosis and treatment . . ." or "psychological treatment or counseling." Section 41-3-443(3)(b)-(c), MCA.

¶12 In this case, the District Court approved and ordered Mother's treatment plan, which required her to undergo a psychological evaluation and follow its recommendations. The District Court was well within its statutory authority to require the evaluation pursuant to § 41-3-437(7)(b)(ii), MCA, in preparation for the disposition hearing, and § 41-3-443(3)(b)-(c), MCA, in ordering Mother's treatment plan. When she signed her treatment plan, Mother agreed to follow the evaluation's recommendations. The court ordered psychological evaluation thus became part of the court proceedings and allowed the court to consider any part of the evaluation for purposes of disposition of the case. Accordingly, the District Court was free to consider Dr. Reed's psychological evaluation at the January 2017 termination hearing in deciding whether to terminate Mother's parental rights.

¶13 Such a conclusion is consistent with the statutory scheme and objectives of youth in need of care proceedings. A distinct purpose of the evaluation was to identify Mother's mental health issues, a factor the District Court must consider when deciding whether or not to terminate parental rights pursuant to § 41-3-609(2)(a), MCA. Indeed, Mother's compliance with the recommendations of the previously ordered evaluation was one of the salient issues to be assessed by the District Court at the termination hearing. A district court should not be precluded from considering at a later time in the same proceeding an evaluation it previously ordered in a treatment plan that was agreed to by Mother and approved by the court. If Mother needed the doctor for cross-examination or confrontation, Mother could have subpoenaed Dr. Reed before the January termination hearing to ensure the doctor's presence and availability for questioning. As the

6

evaluation was previously ordered by the court and became part of the court proceeding, it did not have to be admitted under a hearsay exception. Therefore, we do not consider whether the evaluation is a business record. Our decision is based on the unique statutory scheme of youth in need of care proceedings and the requirement that a parent's mental health be considered in assessing the parent's ability to continue to parent. Parents may always dispute the validity of an evaluation by subpoenaing the evaluator and raising an objection at the appropriate time.

¶14 Finally, Mother also argues her due process rights were violated because TLC expired in May 2016 and the Department's petition filed in September of 2016 was a request to extend TLC, rather than a petition to adjudicate M.C. as a youth in need of care. We do not address this issue because Mother waived it in September 2016 when she agreed to the Department's request that TLC be extended for six months and represented to the court it was not necessary for the Department to file a new petition to adjudicate M.C. as a youth in need of care. Mother also contends the Department failed to accommodate her reading disability and provide an appropriate treatment plan as required by the Americans with Disabilities Act (ADA). This Court does not consider issues raised for the first time on appeal "because it is fundamentally unfair to fault the trial court for failing to rule correctly on an issue it was never given the opportunity to consider." *In re T.E.*, 2002 MT 195, ¶ 20, 311 Mont. 148, 54 P.3d 38 (quoting *In re D.H.*, 2001 MT 200, ¶ 41, 306 Mont. 278, 33 P.3d 616). Therefore, "[i]n order to preserve a claim or objection for appeal, an appellant must first raise that specific claim or objection in the district court." *In re T.E.*, ¶ 20. Here, Mother did not preserve her

accommodation and ADA claims for appeal because she did not raise the issues in District Court.

## CONCLUSION

¶15 During an abuse and neglect proceeding, a court may order the psychological evaluation of a parent pursuant to multiple statutes. If a treatment plan requires a parent follow a psychological evaluation's recommendations, a court must have access to the evaluation to determine whether a parent complied with his or her treatment plan. Furthermore, court ordered psychological evaluations help a court evaluate a parent's mental health during termination proceedings. Such evaluations are part of the court record and may be used by the court throughout an abuse and neglect proceeding.

¶16 Affirmed.

/S/ LAURIE McKINNON

We Concur:

/S/ MIKE McGRATH
/S/ JAMES JEREMIAH SHEA
/S/ MICHAEL E WHEAT
/S/ DIRK M. SANDEFUR