

DA 21-0066

FILED

09/07/2021

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 21-0066

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2021 MT 224N

IN THE MATTER OF:

K.E.R.,

A Youth in Need of Care.

FILED

SEP 07 2021

Bowen Greenwood
Clerk of Supreme Court
State of Montana

APPEAL FROM: District Court of the Thirteenth Judicial District,
In and For the County of Yellowstone, Cause No. DN 19-88
Honorable Michael G. Moses, Presiding Judge

COUNSEL OF RECORD:

For Appellant:

Taryn Gray, Driscoll Hathaway Law Group, Missoula, Montana

For Appellee:

Austin Knudsen, Montana Attorney General, Katie F. Schulz, Assistant
Attorney General, Helena, Montana

Scott D. Twito, Yellowstone County Attorney, Scott Pederson, Deputy
County Attorney, Billings, Montana

Submitted on Briefs: July 28, 2021

Decided: September 7, 2021

Filed:

_____
Clerk

Justice Ingrid Gustafson delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 K.M. (Mother) appeals from the Findings of Fact, Conclusions of Law, Order Terminating Parental Rights issued May 20, 2021, by the Thirteenth Judicial District Court, Yellowstone County, terminating Mother's parental rights to K.E.R. (Child). We affirm.

¶3 The Department of Public Health and Human Services, Child and Family Services Division (the Department) became involved with this family at the hospital shortly after Mother gave birth to her second child.[1] At the time Mother's second child was born, Child was in the care of her maternal grandmother (Grandmother) and had been in her care for several months prior.

¶4 A Show Cause hearing was held March 27, 2019, where Mother did not contest the relief requested by the Department. Child was adjudicated a Youth in Need of Care (YINC) on May 22, 2019. The court approved Mother's Phase I Treatment Plan on May 22, 2019,

---

[1] The second child is not at issue in this case. At the time of delivery, Mother had made arrangements to place that child for adoption through Lutheran Social Services. That adoption has since occurred.

2

which was filed April 1, 2019. Almost a year later, on March 13, 2020, the Department filed a petition seeking termination of Mother's parental rights.

¶5    Mother contested termination of her parental rights and hearing on the Department's termination petition was held August 26, 2020. At the hearing, Mother basically admitted she had not successfully completed her treatment plan but rather sought additional time to work her treatment plan. At the end of the hearing, the District Court acknowledged that Mother had completed some of her treatment plan tasks, had worked hard over the preceding eight weeks, and that her condition had changed slightly for the better. The District Court weighed whether, under these circumstances where Mother had shown some recent improved change, it was in Child's best interest to secure permanency with termination of Mother's parental rights or to provide Mother additional time to work her treatment plan. Ultimately, the District Court ruled from the bench, terminating Mother's parental rights.

¶6    We review a court's decision to terminate parental rights for abuse of discretion— whether the court acted arbitrarily, without conscientious judgment, or exceeded the bounds of reason, resulting in substantial injustice. *In re A.S.*, 2016 MT 156, ¶ 11, 384 Mont. 41, 373 P.3d 848. We review a district court's findings of fact for clear error and conclusions of law for correctness. *In re M.V.R.*, 2016 MT 309, ¶ 23, 385 Mont. 448, 384 P.3d 1058.

¶7    Mother asserts the Department failed to prove by clear and convincing evidence that termination of Mother's parental rights was in Child's best interest. She asserts rather there

3

was clear and convincing evidence that Child's best interests would be served by guardianship, rather than termination of her parental rights. The State counters that Mother failed to suggest at any time throughout the pendency of the case that the Department should pursue guardianship with Grandmother.

¶8 Generally, we do not consider issues raised for the first time on appeal as it is fundamentally unfair to fault a trial court for failing to correctly consider an issue it was never given the opportunity to consider. *In re M.C.*, 2017 MT 252, ¶ 14, 389 Mont. 78, 403 P.3d 1266. We agree with Mother that a court may order guardianship as a disposition pursuant to § 41-3-444, MCA.[2] We agree with Mother that adoption does not necessarily offer safer or better well-being outcomes for children when compared to children who exited into guardianship and there is no statutory permanency preference between guardianship and adoption. *See In re A.B.*, 2020 MT 64, ¶ 52, 399 Mont. 219, 460 P.3d 405 (Gustafson, J., concurring). While guardianship may be an available disposition in an abuse or neglect proceeding, it is not what the Department sought here. The Department filed a petition seeking termination of Mother's parental rights. Mother contested it, arguing she should be given more time to complete her treatment plan to effectuate sustained change. Mother acknowledged she had not completed the tasks of her treatment

---

[2] Pursuant to § 41-3-444, MCA, guardianship is an available disposition if a child has been adjudicated a YINC, the Department has made reasonable reunification efforts, the child has lived with the potential guardian in a family setting, termination of parental rights is not in the child's best interests or parental rights have been terminated, but adoption is not in the child's best interests, and the Department has consented to the guardianship.

4

plan and requested, in light of the recent gains she had made, the District Court permit her additional time to work her treatment plan. Although Mother's counsel made inquiry of Grandmother at the termination hearing as to whether she would be willing to be a guardian, that was the extent to which Mother raised the issue of guardianship. She did not file any petition, motion, or written request that the court consider guardianship. She did not assert she had sought consent from the Department to a guardianship and said consent had been unreasonably denied. In fact, there is nothing in the record to suggest Mother, or Grandmother, sought consent of the Department to a guardianship or that the Department in any way considered the alternative of guardianship. When the court expressed that it had to determine if it was in Child's best interest to secure permanency through termination with adoption or delay permanency to permit Mother more time to work her treatment plan, Mother did not suggest guardianship as an alternative—a means of securing permanency while still permitting Mother incentive to continue to improve her condition and retain her parental rights. As such, we agree with the State that Mother failed to preserve for appeal her claim that it was in Child's best interest to accomplish a guardianship with Grandmother rather than terminate her parental rights.[3]

---

[3] Appellant counsel's apt briefing on the availability of guardianship as a disposition and emerging data that adoption does not necessarily offer safer or better well-being outcomes for children who exited to adoption compared to those who exited to guardianship cannot overcome Mother's failure to raise this issue below.

¶9 The record supports the District Court's termination of Mother's parental rights pursuant to § 41-3-609(1)(f) and -609(2), MCA. Child was adjudicated a YINC on May 22, 2019.[4] *See* § 41-3-609(1)(f), MCA. An appropriate treatment plan was approved by the court, which Mother did not successfully complete. *See* § 41-3-609(1)(f)(i), MCA. Although the conduct rendering Mother unable to parent had been ameliorated to some extent in the approximate eight weeks prior to the termination hearing, Mother had not shown sustained change and her condition continued to render her unable to give Child adequate care for the foreseeable future. *See* § 46-3-609(1)(f)(ii), MCA. This would likely result in continued abuse or neglect had Child been returned to Mother's care at that time. *See* § 46-3-609(2), MCA.

¶10 Mother asserts the District Court erred in concluding it was in Child's best interest to terminate the parent-child relationship between Mother and Child as there was evidence presented that Child had a strong bond with Mother and it was in Child's best interest to maintain a relationship with Mother. Mother is correct the record supports it is in Child's best interest to maintain a relationship with Mother. The record also supports it is in Child's best interest to maintain her relationship with Grandmother, as well as maintain the stability of the home and care Grandmother has provided throughout Child's entire life.

---

[4] Several months before the Department became involved with the family, Mother and Grandmother agreed Child should reside with Grandmother as Mother had relapsed and was experiencing housing instability. Although Child was residing in a safe placement with Grandmother on a full-time basis, Mother did not contest adjudication of Child as a YINC.

6

The record supports the District Court's conclusion that the relationship with Mother, as well as the relationship with Grandmother and the stability of care Grandmother provides can be accomplished through termination of Mother's rights with adoption by Grandmother. Grandmother is concerned not only for the care and well-being of Child but also for Mother. Under the unique facts of this case, Grandmother is in a position to meet Child's best interests by being able to safely maintain a relationship between Child and Mother as Mother continues to address her substance abuse and mental health issues, while also providing Child with the critical stability and permanency she needs.[5]

¶11   We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. In the opinion of the Court, the case presents a question controlled by settled law or by the clear application of applicable standards of review.

¶12   Affirmed.

_____
                                                     Justice

We concur:

_____
       Chief Justice

_____

---

[5] While this may also have been possible to achieve through a guardianship, the District Court was not required to sua sponte consider guardianship as an alternative to termination. The court's findings of fact were not clearly erroneous and its conclusions of law were correct.

_____

_____
Justices