FILED

06/28/2016

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA



DA 15-0643

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2016 MT 156

IN THE MATTER OF:

A.S. and A.M.

      Youths in Need of Care.

APPEAL FROM:    District Court of the Eighth Judicial District,
In and For the County of Cascade, Cause Nos. CDN 14-245 and CDN 15-001
Honorable John A. Kutzman, Presiding Judge

COUNSEL OF RECORD:

      For Appellants:

          Julie Brown, Montana Legal Justice, PLLC; Missoula, Montana
(Attorney for Mother)

          Tracy Labin Rhodes, Attorney at Law; Missoula, Montana
(Attorney for Father)

      For Appellee:

          Timothy C. Fox, Montana Attorney General, Katie F. Schulz, Assistant
Attorney General; Helena, Montana

          John W. Parker, Cascade County Attorney, Ryan C. Ball, Deputy Cascade
County Attorney; Great Falls, Montana

              Submitted on Briefs:  May 25, 2016

                     Decided:  June 28, 2016

Filed:

_____
                    Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1 The mother of A.S. and A.M., M.L. (Mother), appeals from the order of the Eighth Judicial District Court, Cascade County, terminating her parental rights to the children. The father of A.S., T.S. (Father), likewise appeals from the District Court's termination of his parental rights to A.S.[1] We affirm. The parties raise the following issues:

*1. Did the District Court abuse its discretion and violate Mother's constitutional rights by terminating her parental rights to the children upon a finding that the conduct or condition rendering her unfit to parent was unlikely to change within a reasonable time?*

*2. Did the District Court lack jurisdiction and abuse its discretion in terminating Father's parental rights to A.S.?*

## FACTUAL AND PROCEDURAL BACKGROUND

¶2 A.S. is a girl born in 2011, and A.M is a boy born in 2008. The Department of Public Health and Human Services, Child and Family Services Division, initially became involved with this family in October 2014 upon receiving separate reports from law enforcement that Father, Mother, and Mother's boyfriend were involved with illegal drugs, specifically, methamphetamine. Upon a raid of Father's residence in Great Falls, police found drug residue, drug paraphernalia, and indicators that a small child lived there. However, neither Father nor A.S. was found, and the Department commenced an effort to locate A.S. Two weeks later, on October 23, 2014, the Department located A.S. with Father's parents, who reported that they had been contacted two days earlier by a

---

[1] Two cases, one for each child, were handled in parallel proceedings in the District Court, including a simultaneously-conducted termination hearing, and identical original orders were entered in each proceeding. Separate appeals were filed and, upon an unopposed motion by counsel for Mother, the appeals were consolidated by order of this Court on January 15, 2016.

2

woman whose last name they did not know, asking them to pick up A.S., which they did. They had heard nothing from either Father or Mother. The Department placed A.S. into protective custody, and received a report from law enforcement that active cases were pending against Mother and her boyfriend. Because the whereabouts of both parents remained unknown, they were served by publication with the Department's petition for emergency services and for adjudication of A.S. as a youth in need of care.

¶3 On December 18, 2014, Child Protective Specialist Sarah Peterson received a call from Mother, who stated she was now in Great Falls and wanted to pick up A.S. Peterson told Mother she needed to attend the show cause hearing set for the next day, but neither Mother nor Father appeared. The District Court received testimony from Peterson and police officers, and at the conclusion of the hearing, adjudicated A.S. as a youth in need of care based on her parents' abandonment and physical neglect, and granted the Department temporary legal custody until a dispositional hearing in January 2015.

¶4 During these proceedings, the Department received a report concerning A.S.'s half-brother, A.M. Peterson learned that A.M. had been living with his father, W.M., on weekends and living with Mother's mother, K.P., during the week, but that Mother and her boyfriend had begun living with K.P. as well. Mother's boyfriend had been arrested and, based on concerns about Mother's avoidance of the Department with regard to A.S., as well as reported concerns over her use of methamphetamine and association with other

methamphetamine users, the Department placed A.M. in the care of his father[2] and filed a petition for emergency services and adjudication of A.M. as a youth in need of care.

¶5 Neither Mother nor Father attended the dispositional hearing for A.S. on January 13, 2015. The court received testimony and approved the proposed treatment plans for Mother and Father, subject to either parent entering an objection and requesting a hearing within 15 days. Appointed counsel for both parents were in attendance. Mother's counsel agreed to the treatment plan but Father's counsel took no position because he had not had contact with Father. No objections were filed thereafter by either Mother or Father.

¶6 At the January 20, 2015, show cause hearing for A.M., Mother attended and A.M.'s father, W.M., stipulated to the relief sought. The court adjudicated A.M. as a youth in need of care and approved the same treatment plan for Mother as had been approved for her in A.S.'s case.

¶7 Mother had difficulty completing tasks under her treatment plans. She missed numerous appointments scheduled during the period of February-May 2015 for a chemical dependency evaluation, and one was never conducted. Therefore, recommendations from the chemical dependency counselor were not obtained or followed by Mother. She attended one parenting class after missing several appointments, only to fall asleep during class interactions. She was unable to repeat back

---

[2] Father W.M.'s parental rights to A.M. were not terminated by the District Court in this proceeding, and his case was scheduled for further hearings. W.M. is not before us as a party in this appeal.

any of the covered material. The District Court found that at this session Mother "was emotional, blamed others, and denied responsibility." She did not provide samples for urinalysis or hair testing. She did not obtain employment during this time, stating she could not maintain employment because she suffered from epileptic seizures. Early in the process, Peterson considered a guardianship plan, under which A.S. would enter a guardianship with her paternal grandparents. However, Mother failed to comply with requests for information about her medical condition or sign medical releases, and this plan was abandoned. As of April 2015, Mother was failing her treatment plan. She did not regularly attend her appointments with Peterson or keep in contact with the Department. She did not complete any in-home parenting sessions. The District Court found that Mother had not provided a safe and stable environment for A.S. and A.M. Mother did attend seven of her eleven scheduled visits with the children. A.M. enjoyed these visits but was distraught over the visits that Mother failed to attend, and Peterson testified it did not appear that A.S. knew who Mother was. During a status hearing on April 7, 2015, Mother was admonished by the District Court that her failure to engage her treatment plan may result in termination of her parental rights.

¶8 Father was arrested and placed in jail multiple times during the time his treatment plan was in effect, which complicated his ability to work on his plan, including obtaining a chemical dependency evaluation. The District Court found he did not provide a safe and stable home environment for A.S., had not attended parenting classes, provided any samples for urinalysis, provided evidence of employment, or been in regular contact with

the Department. Father wrote a letter to the Department from the jail, and attended several supervised visits with A.S. that went well. A.S. was glad to see him. He was not able to articulate to the Department a plan to care for A.S., and the District Court found that, in May 2015, Father "admitted to Ms. Peterson that he was not in a position to parent [A.S.]."

¶9 In July 2015, the Department filed a petition for termination of parental rights as to Mother for both A.S. and A.M., and as to Father for A.S. Both parents had to again be served by publication because neither of them had maintained contact with the Department and their whereabouts were unknown. The District Court conducted a hearing on the petition on September 1-2, 2015. The children's guardian ad litem supported termination of both Mother and Father's parental rights, arguing that neither parent had made a "sincere attempt" to satisfy their treatment plans, that Father had demonstrated no real interest in parenting A.S., and that "although no one is exactly clear where he is right now, it seems that he's likely not incarcerated. . . . but he's not here," that Mother had continually relied upon a claimed medical condition for failing to comply with her treatment plan, without documentation of the condition, and that "it [] seems to be an all-purpose excuse to be trotted out whenever necessary to explain I didn't comply . . . ."

¶10 The District Court entered orders terminating Mother and Father's parental rights on October 2, 2015. Mother and Father appeal.

STANDARD OF REVIEW

¶11 "This Court reviews a district court's decision to terminate parental rights for an abuse of discretion." *In re K.A.*, 2016 MT 27, ¶ 19, 382 Mont. 165, 365 P.3d 478 (citing *In re E.Z.C.*, 2013 MT 123, ¶ 19, 370 Mont. 116, 300 P.3d 1174) (citation omitted).

> A district court abuses its discretion when it acts arbitrarily, without employment of conscientious judgment, or in excess of the bounds of reason, resulting in substantial injustice. This Court will not disturb a district court's decision on appeal unless "there is a mistake of law or a finding of fact not supported by substantial evidence that would amount to a clear abuse of discretion." We review a district court's findings of fact to determine whether they are clearly erroneous and its conclusions of law to determine whether they are correct.

*In re K.A.*, ¶ 19 (citing *In re T.S.*, 2013 MT 274, ¶ 21, 372 Mont. 79, 310 P.3d 538) (citation omitted).

## DISCUSSION

¶12 *1. Did the District Court abuse its discretion and violate Mother's constitutional rights by terminating her parental rights to the children upon a finding that the conduct or condition rendering her unfit to parent was unlikely to change within a reasonable time?*

¶13 Mother argues the District Court's determination that her unfitness to parent was unlikely to change within a reasonable time was not supported by sufficient evidence, thus violating the statutory requirements for termination of parental rights and her due process entitlement to "fundamentally fair procedures at all stages of the proceedings," citing *In re C.J.*, 2010 MT 179, ¶ 26, 357 Mont. 219, 237 P.3d 1282. Conceding that she failed to complete most of her treatment plan tasks, Mother argues this failure is explained by her "mistaken understanding that because an alternative plan was in the

works that she did not need to work on her treatment plan," referring to the guardianship plan briefly considered by Peterson early in the treatment plan process. Mother contends that "she believed her parental rights were not at risk and she did not need to complete the treatment plan."

¶14 The District Court concluded that "[c]lear and convincing evidence establishes that [Mother's] Treatment Plan 'has not been successful' in *changing* the conduct and conditions that render her unfit as a parent. . . . [Mother's] *ongoing* emotional instability and self-absorption manifests itself in conduct that renders her unfit, unable, or unwilling to give [A.S.] and [A.M.] adequate parental care." (Emphasis added.) The court further concluded that "[c]ontinuation of the parent-child relationship between these children and [Mother] will result in an ongoing risk of abuse or neglect to them."[3] These conclusions by the District Court demonstrate Mother's problems were unchanging and continuing, and were fully supported by substantial evidence, detailed above. Mother was clearly going nowhere on her treatment plan or making any progress in addressing the life issues rendering her unfit to parent the children.

¶15 Mother's assertion that a "misunderstanding" about a possible guardianship of A.S. led her to believe she did not need to complete her treatment plan is unpersuasive. That idea was considered and abandoned early in the process. There is no evidence that Mother was advised it was no longer necessary to complete her treatment plan; just the opposite, she was urged by the Department and admonished by the Court to complete it.

---

[3] These determinations are made pursuant to § 41-3-609(2), MCA.

Her attempts to complete some of the treatment plan tasks along the way, albeit feeble, belie her argument about a "misunderstanding."

¶16 Mother argues that the eight-month period "between the treatment plan's approval and the filing of the termination petition was too short to accurately determine [her] ability to become a more successful parent," and this time was "insufficient" to assess her "likelihood of change." The District Court determined in its October 2015 order that "[t]he best interests of [A.S.] and [A.M.] circumscribe the amount of time within which it is 'reasonable' to hope and wait for this conduct and these conditions to change. . . . [A.S.] has been in state custody since October of 2014. [A.M.] has been in custody since January 2015 and has been moved and replaced four times since then. These children cannot wait any longer."

¶17 When considering whether the conduct or condition rendering the parents unfit is likely to change for purposes of the termination decision, "the court shall give primary consideration to the physical, mental, and emotional conditions and needs of the child." Section 41-3-609(3), MCA. The District Court did so, and determined upon substantial evidence that the best interests of the children were not served by giving Mother more time. While parents dawdle, the clock ticks for children until it is unreasonable to wait any longer. Though warned, Mother avoided the tasks laid before her and instead, as found by the District Court, blamed others and shifted responsibility. The District Court did not err in terminating her parental rights.

¶18    *2. Did the District Court lack jurisdiction and abuse its discretion in terminating Father's parental rights to A.S.?*

¶19    Father argues that the District Court "lacked the jurisdiction to order the termination of Father's parental rights as it did not make the statutory finding required by Mont. Code Ann. § 41-3-609(1)(f)(ii) that the conduct [or] condition rendering Father unfit was unlikely to change within a reasonable amount of time." Father argues that this failure also violated his constitutional right to fundamentally fair procedures, including that each statutory element be supported by sufficient evidence, citing *In re B.N.Y.*, 2003 MT 241, 317 Mont. 291, 77 P.3d 189, and *In re Custody of M.W.*, 2001 MT 78, 305 Mont. 80, 23 P.3d 206.

¶20    To the extent that Father frames his argument as a jurisdictional issue, we have recently clarified that a court's failure to follow statutory requirements in an abuse and neglect matter does not affect its subject matter jurisdiction. *See In re K.B.*, 2016 MT 73, ¶ 12, 383 Mont. 85, 368 P.3d 722; *In re B.W.S.*, 2014 MT 198, ¶ 13, 376 Mont. 43, 330 P.3d 467. Further, the case authority cited by Father concerned whether the subject children had been properly adjudicated as youths in need of care before custody could be awarded to the State, a threshold issue that is not present here. However, Father correctly notes that the District Court did not enter a finding stating that Father's conduct or condition rendering him unfit was unlikely to change within a reasonable time, as required by § 41-3-609(1)(f)(ii), MCA.

¶21    The District Court determined that "[c]lear and convincing evidence establishes that [Father's] Treatment Plan 'has not been successful' in *changing* the conduct and

10

conditions that render him unfit as a parent. . . . [H]is *ongoing* entanglement with the criminal law renders him unfit and unable to give [A.S.] adequate parental care." (Emphasis added.) The court also determined that continuation of the parent-child relationship between Father and A.S. "will result in an *ongoing* risk of abuse or neglect to her." (Emphasis added.) While it would have been preferable for the District Court to enter an express finding that Father's condition rendering him an unfit parent was unlikely to change within a reasonable time, the court's determinations here clearly incorporated the recognition that Father's condition was continuing and would prevent him from being able to parent A.S. into the reasonable future. This case is appropriate for an implied finding that Father's conduct or condition rendering him unfit to parent was unlikely to change with a reasonable time, pursuant to the doctrine of implied findings. *See In re J.B.*, 2016 MT 68, ¶ 25, 383 Mont. 48, 368 P.3d 715 ("This doctrine holds that where 'findings are general in terms, any findings not specifically made, but necessary to the determination, are deemed to have been implied, if supported by the evidence.'") (citation omitted).

¶22 Father anticipates our use of an implied finding and argues preemptively that the termination of his parental rights "cannot stand even if the Court applies the doctrine of implied findings . . . . [T]he evidence presented by the Department does not support a finding that the conduct or condition rendering Father unfit was unlikely to change within a reasonable time." However, we disagree. Throughout this matter, the most notable fact about Father has been his perpetual absence. In the beginning, he was absent when the

11

Department was looking for A.S., despite the fact she was supposed to be residing with Father. He was absent when A.S. was located at the home of his parents, who had heard nothing from Father, and who had regained A.S. when a woman contacted them. He was absent at the initial hearings in A.S.'s case, and his attorney had no contact with him. His incarceration rendered him absent during periods when his treatment plan was in effect. He was absent during the termination hearing, when A.S.'s guardian ad litem noted, "no one is exactly clear where he is right now[.]" Father had to be served twice by publication. Our previous holding regarding likelihood of change is just as applicable here: "Father cannot benefit from his lack of involvement in this matter. The court may consider Father's past conduct to determine that Father's conduct likely would not change." *In re R.M.T.*, 2011 MT 164, ¶ 38, 361 Mont. 159, 256 P.3d 935 (citing *In re D.A.*, 2008 MT 247, ¶ 23, 344 Mont. 513, 189 P.3d 631). Here, we can conclude from Father's past conduct, including his failure to complete his treatment plan, that it is likely that Father will continue to be absent, will be unable to change within the reasonable future, and will be unable to parent A.S. Based on this record, and the substantial evidence before the District Court, we conclude further that the court did not abuse its discretion in determining that termination of Father's rights was in A.S.'s best interests.

¶23    Affirmed.

/S/ JIM RICE

We concur:

/S/ MIKE McGRATH
/S/ JAMES JEREMIAH SHEA
/S/ MICHAEL E WHEAT
/S/ BETH BAKER