DA 20-0147

FILED

01/05/2021

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2021 MT 2

IN THE MATTER OF:

D.A.D., M.J.D., and C.M.D.,

      Youths in Need of Care.

<table>
<tr><td>APPEAL FROM:</td><td>District Court of the Thirteenth Judicial District,<br>In and For the County of Yellowstone, Cause Nos. DN 18-498, DN 18-499,<br>and DN 18-500<br>Honorable Donald L. Harris, Presiding Judge</td></tr>
</table>

COUNSEL OF RECORD:

      For Appellant:

          Michael P. Sinks, Attorney at Law, Bozeman, Montana

      For Appellee:

          Austin Knudsen, Montana Attorney General, Katie F. Schulz, Assistant
          Attorney General, Helena, Montana

          Scott D. Twito, Yellowstone County Attorney, Scott J. Pederson, Deputy
          County Attorney, Billings, Montana

Submitted on Briefs:  November 18, 2020

Decided:  January 5, 2021

Filed:

_____
Clerk

Justice Ingrid Gustafson delivered the Opinion of the Court.

¶1 A.C. (Mother) appeals from the February 11, 2020 Findings of Fact, Conclusions of Law, and Order Terminating Natural Mother's Parental Rights, which terminated her parental rights to her three children, D.A.D., M.J.D., and C.M.D. Mother argues her attorney provided ineffective assistance of counsel when he stipulated to the Department's request that no reunification services be provided to her. We affirm.

## PROCEDURAL AND FACTUAL BACKGROUND

¶2 Mother has a long history with the Department of Public Health and Human Services, Child and Family Services Division (the "Department"), dating back to at least 2013. Mother's children were first removed in 2013, while their biological father was investigated for sexually assaulting his six-year-old niece. The children were removed a second time in November 2014 when the youngest child, C.M.D., was brought to the emergency room with injuries from a sexual assault committed by her father and had to be flown to a children's hospital in Colorado for reconstructive surgery.[1] The children were returned to Mother's care in March 2015. The Department intervened and removed the children for a third time in March 2017 when D.A.D. went to school with a bruise on his right cheek from Mother hitting him in the face. Mother was given a deferred sentence on a felony in state district court in March 2018 and the children transitioned back to her care one at a time until the Department dismissed the cases in September 2018. Just three

---

[1] The parental rights of the children's biological father were previously terminated and are not at issue in this appeal.

months later in December 2018, Mother was arrested on federal drug charges. The federal charges against Mother alleged that she had been selling methamphetamine to undercover buyers during the time period the children were being transitioned back to her care by the Department. When she was arrested, Mother was found in possession of three pounds of 100 percent pure methamphetamine, and investigators believed Mother received the methamphetamine at her home where she lived with her children. The Department placed Mother's three children in foster care for the fourth time in five years due to Mother's arrest on federal drug charges.[2] The Department placed C.M.D. with the same foster family she was placed with during a prior removal and placed the other two children together with a separate foster family.

¶3 The District Court found probable cause existed to believe the children were abused or neglected or in danger of being abused or neglected and immediate protection of the children was required and granted Emergency Protective Services (EPS) to the Department on December 21, 2018. The court held a show cause hearing on January 3, 2019, at which the parties stipulated to the same and the court continued its order for EPS.

¶4 Due to issues with securing Mother's presence for hearings because of her federal incarceration, the adjudication hearing was continued several times to June 27, 2019. In the meantime, the Department petitioned for a determination from the court that preservation and reunification services need not be provided to Mother under § 41-3-423(2), MCA, because Mother had subjected the children to aggravated

---

[2] Mother remained incarcerated for the entire pendency of these proceedings.

circumstances, specifically chronic, severe neglect. The Court also held a placement hearing on June 12, 2019, because of a disagreement between the Guardian Ad Litem (GAL), the Court-Appointed Special Advocate (CASA), and the Department about placements for the children. At the time of the hearing, C.M.D. remained with her foster family, but D.A.D. and M.J.D. had been transitioned to their maternal aunt's care. The GAL and CASA advocated for M.J.D to be placed with his paternal grandparents and D.A.D. and C.M.D. to remain in their current placements, due to behavioral issues and the volatile relationships between the children. The CASA informed the court the children and their therapist supported this arrangement. The Department advocated for D.A.D. and M.J.D. to remain together. Mother advocated for all the children to be in kinship placements, but did not object to separating D.A.D. and M.J.D. The court found it was in the best interests of the children to separate the children and ordered D.A.D. placed with his maternal aunt, M.J.D. placed with his paternal grandparents, and C.M.D. remain with her foster family.

¶5 A combined hearing on adjudication, disposition, and the petition for no reunification services took place on June 27, 2019. The day before the hearing, Mother was sentenced to 48 months in federal custody followed by five years of probation on the federal drug charges. Mother stipulated to adjudication of the children as youths in need of care (YINC) and a grant of temporary legal custody (TLC) to the Department, but preserved the right to assert any defenses or claims that could be asserted at the time of adjudication and disposition at the termination hearing. Mother also did not object to the Department's request to not provide reunification services to her, because she would be

receiving services through the federal prison system, and although she had requested to be within 500 miles of Billings, Montana, it was not clear where Mother would be housed within the federal prison system. Later during the hearing, the Department asked the court to clarify whether it was finding Mother subjected the children to severe, chronic neglect based on the stipulation of the parties, which the court affirmed. Mother did not object. The court found the children were YINC, granted TLC to the Department, and granted the Department's petition not to provide reunification services to Mother based on its finding that Mother subjected the children to severe, chronic neglect. The court acknowledged that Mother reserved her right to contest a petition for termination of parental rights.

¶6 On August 30, 2019, the Department filed a Petition for Permanent Legal Custody and Termination of Parental Rights with Right to Consent to Adoption. The Department sought termination under §§ 41-3-609(1)(d) and -423(2)(a), MCA, alleging Mother subjected the children to chronic, severe neglect or, alternatively, under § 41-3-609(4)(c), MCA, alleging Mother is incarcerated for more than one year and reunification of the child with Mother is not in the best interests of the children because of the children's circumstances, including placement options, age, and developmental, cognitive, and psychological needs. In the attached affidavit, Child Protection Specialist (CPS) Dawn Bushard laid out the history of Department involvement with the family. She attested the children had been in the care of the Department for 21 of the last 24 months. The CASA also submitted a report on each of the children to the court. The CASA supported termination of Mother's parental rights and adoption by each of the current placements. She emphasized each of the children's needs for stability, noting that the children had been

4

removed by the Department four times and between the three of them, they had been enrolled in 12 different schools and placed in 15 different foster homes in the last three years.

¶7 In response, Mother filed a motion to dismiss arguing the Department did not need to intervene and terminate her parental rights in this case, because Mother has sought and secured family to care for her children while she is unable to care for them herself during her incarceration. Mother argued there was no clear and convincing evidence as required by § 41-3-609(4)(c), MCA, that the children's circumstances, including placement options, age, and developmental needs cannot be met simply by dismissing the case and placing the children with her extended family as Mother wants. The Department opposed the motion.

¶8 On October 16, 2019, the Department filed a written motion for the court to order mediation and requested a continuance at the first termination hearing scheduled for October 17, 2019, in order for mediation to be conducted. The court continued the termination hearing and ordered mediation.

¶9 The termination hearing was held on January 2, 2020. The Department called two witnesses: CPS Bushard and the CASA. Bushard testified about the multiple placements of the children and their need for permanency. In her opinion, the children's behavioral issues stemmed from the lack of permanency in their lives, and the uncertainty was causing the children trauma. The CASA explained between the three children, they had been in 12 schools and 15 different placements in the last three years. She had been involved with the children for three years and had seen them flourish when placed separately during the last removal, seen them struggle when returned to Mother, and seen them improve when placed

5

separately again during this removal. The CASA testified C.M.D. was fearful of being taken from her foster family and did not want to leave her foster family. The CASA explained she supported termination of Mother's parental rights to provide the children with permanency. The CASA believed it would be too long before Mother was released from prison and could care for the children again. In addition, the CASA explained that when the children were returned to Mother, they were not going to school or were late for school, and they would show up to school dirty and hungry. The children had been removed previously because Mother hit D.A.D. and she failed to protect her daughter from the biological father, even after allegations of sexual assault on his niece surfaced. The CASA strongly objected to placing the children together or disrupting their present placements.

¶10 Mother testified on her own behalf. Mother asked for guardianships for her three children. She asked for M.J.D. to remain with his paternal grandparents and D.A.D. and C.M.D. to be placed with their maternal aunt. Mother told the court she could be released to home confinement in Billings as early as December 2021.

¶11 C.M.D.'s foster mother, the maternal aunt, and the paternal grandfather all testified the children were doing well, catching up in school, and participating in extracurricular activities. C.M.D's foster mother testified that C.M.D. visited her brothers about once or twice a month. The brothers had visited her at the foster family's home on one occasion, but C.M.D. was upset the boys were in her house and she did not want her brothers in her home again. Subsequent visits between the children have been outside C.M.D.'s foster

home. All agreed the boys should not be placed together, but the maternal aunt and paternal grandfather both testified that C.M.D. should be placed with one of her brothers.

¶12 In its Findings of Fact, Conclusions of Law, and Order Terminating Natural Mother's Parental Rights, the District Court found that from March 1, 2019, to January 2, 2020, the children had been removed from Mother's care for approximately 31 of the last 34 months. From January 2, 2020, to December 2021—Mother's earliest release date—the children will have been removed from her care for an additional 23 months. The court found Mother's "incarceration until at least December 2021 renders reunification services ineffective and not in the children's best interests because they desperately need the stability, continuity, and safety provided by their current placements now" and keeping the children "in limbo until [Mother] discharges her sentence would be detrimental to their wellbeing." The court found the children needed different placements because of behavioral problems, including their bullying and fighting with each other. Since being separated, the children appear to have adjusted to the current placements and are doing well. The court determined continuing the parent-child legal relationship between Mother and any of the three children would likely result in continued abuse or neglect. It determined it was in the best interests of the children to terminate Mother's parental rights and concluded it was appropriate to terminate Mother's parental rights pursuant to § 41-3-609(1)(d), MCA, because Mother had subjected the children to chronic, severe neglect under § 41-3-423(2)(a), MCA. The court specifically considered Mother's requests for a guardianship, rather than termination of her parental rights, but determined this put Mother's interests above the best interests of the children.

STANDARD OF REVIEW

¶13 Parents in termination proceedings have a due process right to effective assistance of counsel. *In re B.H.*, 2020 MT 4, ¶ 27, 398 Mont. 275, 456 P.3d 233. Whether a parent has been denied his or her right to due process is a question of constitutional law over which this Court's review is plenary. *In re B.H.*, ¶ 27.

**DISCUSSION**

¶14 Mother argues her attorney provided ineffective assistance of counsel throughout the termination proceedings in this case because he stipulated to the Department's request that no reunification services be provided to Mother. Mother argues by stipulating no reunification services need be provided under § 41-3-423(2), MCA, counsel also effectively stipulated Mother had subjected the children to "chronic, severe neglect" under the statute. She maintains this allowed the Department to proceed to termination of her parental rights on that finding alone. Further, counsel failed to challenge the District Court's finding she subjected her children to chronic, severe neglect at her termination hearing. She maintains she was prejudiced by her attorney's performance because the District Court terminated her parental rights on a finding of chronic, severe neglect, which had hardly any support in the record.

¶15 Parents have a fundamental right to effective assistance of counsel in termination proceedings pursuant to Article II, Section 17, of the Montana Constitution. *In re A.S.*, 2004 MT 62, ¶¶ 12-20, 320 Mont. 268, 87 P.3d 408. In reviewing whether counsel's assistance was effective, we consider counsel's training, experience, and advocacy. *See In re A.S.*, ¶ 26. Effective advocacy requires investigating the case, researching and

understanding the law, meeting with the client, and assiduously advocating for the client. *In re E.Y.R.*, 2019 MT 189, ¶ 22, 396 Mont. 515, 446 P.3d 1117; *In re A.S.*, ¶ 28. Ineffective assistance of counsel requires reversal only if the parent suffered prejudice. *In re E.Y.R.*, ¶ 22.

¶16 Section 41-3-609(1), MCA, sets out the criteria for termination of parental rights. In pertinent part, it provides for termination of parental rights if the parent has subjected a child to aggravated circumstances, such as chronic, severe neglect, *see* §§ 41-3-609(1)(d) and -423(2)(a), MCA, or the child is adjudicated a youth in need of care and an appropriate treatment plan has been unsuccessful and the conduct or condition rendering the parent unfit is unlikely to change within a reasonable time, *see* § 41-3-609(1)(f), MCA. Section 41-3-609(2) and (3), MCA, provide the criteria for the court to consider when determining whether the conduct or condition of the parents rendering them unfit is unlikely to change within a reasonable time. Section 41-3-609(2), MCA, requires "[i]n determining whether the conduct or condition of the parents is unlikely to change within a reasonable time" for the court to "enter a finding that continuation of the parent-child legal relationship will likely result in continued abuse or neglect or that the conduct or the condition of the parents renders the parents unfit, unable, or unwilling to give the child adequate parental care." Along with other pertinent factors, the court must consider the "present judicially ordered long-term confinement of the parent" in making this determination. Section 41-3-609(2)(d), MCA. In considering the factors in subsection (2), the court must "give primary consideration to the physical, mental, and emotional conditions and needs of the child." Section 41-3-609(3), MCA. Subsection (4) explains, in relevant part, a treatment

9

plan is not required if "the parent is or will be incarcerated for more than 1 year and reunification of the child with the parent is not in the best interests of the child because of the child's circumstances, including placement options, age, and developmental, cognitive, and psychological needs." Section 41-3-609(4)(c), MCA. Thus, if a child has been adjudicated a youth in need of care, the long-term incarceration of a parent can relieve the Department of the need to provide a treatment plan under § 41-3-609(1)(f)(i), MCA, and support a finding the conduct or condition of the parent rendering her unfit is unlikely to change within a reasonable time under § 41-3-609(1)(f)(ii), MCA. *See In re Declaring A.N.W.*, 2006 MT 42, ¶ 52, 331 Mont. 208, 130 P.3d 619.

¶17 The Department sought termination of Mother's parental rights pursuant to § 41-3-609(1)(d), MCA, or, alternatively, under § 41-3-609(4)(c), MCA.[3] The District Court found it was proper to terminate Mother's rights under § 41-3-609(1)(d), MCA, based on its finding that Mother had subjected the children to chronic, severe neglect. The Court, however, made additional findings to support termination under § 41-3-609(1)(f), MCA, as well. The court found the children were adjudicated as youths in need of care, the preliminary finding required to terminate parental rights under § 41-3-609(1)(f), MCA, but not § 41-3-609(1)(d), MCA. The court found Mother's incarceration rendered reunification services ineffective and not in the best interests of the children because the

---

[3] While the Department more accurately should have sought termination pursuant to §§ 41-3-609(1)(f) *and* (4)(c), MCA, its petition, nonetheless, makes clear that it was seeking termination on this alternate theory. Reversing for this procedural error would have no impact on the ultimate result. *See In re A.L.P.*, 2020 MT 87, ¶ 27, 399 Mont. 504, 461 P.3d 136.

children "desperately need stability, continuity, and safety provided by their current placements." Thus, the court made clear the treatment plan under § 41-3-609(1)(f)(i), MCA, was not required under § 41-3-609(4)(c), MCA, because of Mother's long-term incarceration and the circumstances of the children. After emphasizing Mother's long-term confinement, the ineffectiveness of reunification services, and the detriment to the children's wellbeing if they were kept "in limbo until [Mother] discharges her sentence," the court found continuing the parent-child legal relationship between Mother and the children would likely result in continued abuse, as required under § 41-3-609(2), MCA, when determining whether the conduct or condition of the parent is unlikely to change within a reasonable time under § 41-3-609(1)(f)(ii), MCA. Although the court did not make an express finding Mother's condition was unlikely to change in a reasonable time, the court's findings clearly incorporated the recognition that Mother's incarceration was continuing and would prevent her from being able to parent the children into the reasonable future. This case is appropriate for an implied finding that Mother's conduct or condition rendering her unfit to parent was unlikely to change within a reasonable time. *See In re A.S.*, 2016 MT 156, ¶ 21, 384 Mont. 41, 373 P.3d 848.

¶18 The District Court considered Mother's long-term incarceration and weighed it against the children's need for stability, continuity, and safety after repeated removals. Because of behavioral problems precipitated by the instability in their lives, the children required separate placements. This was a rare case where no one—not the kinship placements, the Department, the CASA, the GAL, Mother, the children, or the children's therapist—thought it was in the best interest of the children to keep them together. The

11

District Court emphasized the children had already been out of Mother's care for 31 out of the last 34 months and due to her incarceration would be out of her care for a minimum of 23 additional months. The court found waiting for Mother to discharge her sentence would be detrimental to the children's well-being. These findings support the conclusion the treatment plan exemption of § 41-3-609(4)(c), MCA, applied and the condition rendering Mother unfit is unlikely to change within a reasonable time pursuant to § 41-3-609(1)(f)(ii) and (2)(d), MCA. On the record of the case, Mother was not prejudiced by any alleged failure on the part of her attorney to object to the Department's request to not provide reunification services, because the District Court did not err in finding termination would be in the children's best interests and did not abuse its discretion in granting the Department's petition to terminate Mother's parental rights. Mother's prolonged incarceration and the Department's inclusion of § 41-3-609(4)(c), MCA, in its termination petition provided the District Court with grounds to terminate Mother's parental rights independent of whether Mother had subjected the children to chronic, severe neglect, and the District Court made the findings necessary to support termination on that alternate ground.

## CONCLUSION

¶19 The District Court's termination of Mother's parental rights is affirmed.

/S/ INGRID GUSTAFSON

We concur:

/S/ LAURIE McKINNON
/S/ BETH BAKER
/S/ DIRK M. SANDEFUR
/S/ JIM RICE

12