FILED

05/18/2021

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 20-0520

DA 20-0520

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2021 MT 126N

IN THE MATTER OF:

G.H.,

    A Youth in Need of Care.

APPEAL FROM:     District Court of the Second Judicial District,
In and For the County of Butte/Silver Bow, Cause No. DN 19-20-RW
Honorable Robert J. Whelan, Presiding Judge

COUNSEL OF RECORD:

    For Appellant:

        Meri K. Althauser, Forward Legal, PLLC, Missoula, Montana
(for Mother)

        Taryn Gray, Driscoll Hathaway Law Group, Missoula, Montana
(for Father)

    For Appellee:

        Austin Knudsen, Montana Attorney General, Katie F. Schulz, Assistant
Attorney General, Helena, Montana

        Mark Vucurovich, Henningsen, Vucurovich & Richardson, P.C., Butte,
Montana

        Eileen Joyce, Butte-Silver Bow County Attorney, Butte, Montana

Submitted on Briefs:  April 21, 2021

Decided:  May 18, 2021

Filed:

_____
Clerk

Justice Ingrid Gustafson delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 D.S. (Mother/Parent) and C.H. (Father/Parent) appeal from the September 24, 2020 Findings of Fact, Conclusions of Law, and Order Continuing Emergency Protective Services, Determining Preservation/Reunification Services are not Required and Granting Permanent Legal Custody issued by the Second Judicial District Court, Butte-Silver Bow County, terminating both parents' parental rights to G.H. (Child). We affirm.

¶3 Parents have thirteen children, none of which are in their care. This case involves their twelfth child.[1] Prior to the Montana Department of Health and Human Services, Child and Family Services Division (Department) intervening in this case, Parents had a history with the Department, both in Montana and Utah. In 2013, the Utah Department of Child and Family Services sought and obtained involuntary termination of Parents' parental rights to eight other children under circumstances similar to those present in this case—concerns of ongoing substance use resulting in Parents' inability to appropriately provide

---

[1]A thirteenth child, A.H., was born during the pendency of this case, prompting a separate legal intervention by the Department. Parents have secreted this child from the Department and the Department has been unable to determine the whereabouts of this child. That cause is not before us on this appeal.

for the care and needs of their Child and housing instability. In 2015, the Department intervened in relation to two additional children, obtained adjudication of the children as youths in need of care (YINC) and was granted temporary legal custody (TLC). As Parents had not made progress on completing court-ordered treatment plans, the Department sought extension of TLC. At a hearing on the extension, Parents relinquished their parental rights to these two children and they were thereafter placed by the Department for adoption.

¶4 On March 29, 2019, based on the Parents' prior histories with the Department, both in Utah and Montana, the Department intervened and placed newborn Child in protective custody. The parents stipulated to emergency protective services, adjudication of Child as a YINC, and TLC to the Department. The District Court accepted Parents' stipulation and adjudicated Child a YINC on May 1, 2019. On June 7, 2019, the Department petitioned to terminate Parents' parental rights asserting termination to be appropriate pursuant to §§ 41-3-609(1)(d) and 41-3-423(2)(e), MCA, by having had their parental rights to Child's siblings terminated involuntarily under circumstances related to their ability to adequately care for Child. The Department also requested the court order it need not provide further reunification services pursuant to § 41-3-423(2)(e), MCA. Following the termination hearing, the District Court terminated Mother and Father's parental rights to Child— finding termination warranted as the parents had previously had their parental rights to eight of Child's siblings involuntarily terminated under similar circumstances related to their ability to adequately care for Child. The court also ordered the Department need not provide further reunification services. Mother and Father appeal.

¶5 Mother asserts the removal of Child was improper as no present danger was identified and the Department failed to make reasonable efforts to prevent removal or reunify her with Child. Mother also asserts the District Court violated her rights when it terminated her parental rights without sufficient evidence. Father similarly asserts the Department failed to produce by clear and convincing evidence relevant criteria pursuant to §§ 41-3-609(1)(d) and 41-3-423(2)(a)-(e), MCA, and that the District Court violated his constitutional right to parent when it terminated his parental rights after not adhering to statutory requirements that ensure a fundamentally fair process—namely, the Department ceased providing reasonable efforts without a judicial determination to do so.

¶6 We review a district court's decision to terminate parental rights for abuse of discretion—whether the court acted arbitrarily, without conscientious judgment, or exceeded the bounds of reason resulting in substantial injustice. *In re A.S.*, 2016 MT 156, ¶ 11, 384 Mont. 41, 373 P.3d 848. The State must prove by clear and convincing evidence the statutory criteria for termination. *In re R.L.*, 2019 MT 267, ¶ 12, 397 Mont. 507, 452 P.3d 890 (citing *In re K.L.*, 2014 MT 28, ¶ 14, 373 Mont. 421, 318 P.3d 691). "In the context of parental rights cases, clear and convincing evidence is the requirement that a preponderance of the evidence be definite, clear, and convincing." *In re R.L.*, ¶ 12 (citing *In re K.L.*, ¶ 14). This Court reviews a district court's findings of fact for clear error and its conclusions of law for correctness. *In re M.V.R.*, 2016 MT 309, ¶ 23, 385 Mont. 448, 384 P.3d 1058.

¶7 Mother, for the first time on appeal, asserts Child should not have been removed and intervention by the Department was not warranted. Neither Parent objected to the Department's intervention and both Parents stipulated to emergency protective services, adjudication of Child as a YINC, and TLC to the Department. Since neither Parent preserved this claim, Mother now seeks plain error review.[2] Although the asserted error implicates a fundamental right—the right to parent one's child—Mother has failed to establish plain error review is warranted. At the outset of this matter, Parents were each appointed separate legal counsel and had full opportunity to contest intervention, adjudication, and custody. Instead, they stipulated to the relief sought by the Department. Through Parents' failure to contest or object to intervention, adjudication, and custody throughout the case, Parents have waived their right to appeal the appropriateness of intervention, adjudication, or custody. The District Court's acceptance of the Parents' stipulation did not constitute a manifest miscarriage of justice, leave unsettled the question of fundamental fairness of the proceedings, or compromise the integrity of the proceedings.

¶8 Parents next argue there was insufficient evidence to support termination of their parental rights pursuant to § 41-3-423(2)(e), MCA, as the Department did not enter certified copies of the Utah court orders terminating their parental rights to eight other children.

---

[2] Plain error review is invoked sparingly, on a case-by-case basis, and applied only if the error is plain and we are firmly convinced that failing to review would result in a manifest miscarriage of justice, leave unsettled the question of fundamental fairness of the proceedings, or compromise the integrity of the judicial process. *In re B.J.J.*, 2019 MT 129, ¶ 27, 396 Mont. 108, 443 P.3d 488.

¶9 Pursuant to § 41-3-609(1)(d), MCA, a "court may order a termination of the parent-child relationship upon a finding established by clear and convincing evidence" the parents have "subjected a child to any of the circumstances listed in 41-3-423(2)(a) through (2)(e)." The circumstance provided for in § 41-3-423(2)(e), MCA, applies when a parent has:

> had parental rights to the child's sibling or other child of the parent involuntarily terminated and the circumstances related to the termination of parental rights are relevant to the parent's ability to adequately care for the child at issue.

To establish the circumstances of § 41-3-423(2)(e), MCA, the State is not required, although it may have been preferable, to enter certified copies of court orders terminating Parents' rights to other children, but rather must establish such by clear and convincing evidence. *See In re R.L.*, ¶ 12. Here, the record contains substantial, unrebutted evidence, including Father's admission[3] of such, that the circumstances of § 41-3-423(2)(e), MCA— involuntary termination of parental rights to eight of Child's siblings occurred in Utah in 2013 under similar circumstances to those impairing Parents' ability to care for Child— were met. The evidence is not only clear and convincing but overwhelming. Prior to appeal, throughout all of the proceedings, Parents did not seriously contest that the prior terminations occurred and their appeal in this regard is disingenuous at best.

---

[3] While Father testified their rights to eight other children were terminated in Utah, he asserted he did not recall if the terminations were involuntary. Such lack of recall does not negate Father's admission in that the involuntary terminations were asserted and relied upon by the Department from the outset of this case. Parents did not object to or rebut Child Protection Specialist (CPS) Burk's initial affidavit which included averments that Parents' parental rights to eight of Child's siblings had previously been involuntarily terminated in Utah.

¶10 Finally, Parents assert the Department deprived them of fundamentally fair proceedings by failing to provide reasonable efforts for reunification without first obtaining a court order permitting such. From our review of the record, we are not persuaded by this argument. At the outset of the case, CPS Burk arranged visitation between Child and Parents. While it could be argued that the frequency of visitation was not ideal to promote bonding with a newborn, the Parents did not even attend the visitation arranged, no-showing for several visits and arriving inappropriately late to others. Despite at times exhibiting behaviors consistent with drug or alcohol use—such as nodding off while holding Child and smelling of alcohol—Parents contended they no longer had drug or alcohol issues and refused Department requests for UA testing without a court order requiring such. Within approximately a month of adjudication, the Department sought to be relieved of providing preservation/reunification services and sought termination of Parents' parental rights. While the Department sought this, it continued to provide engagement services, which constituted reasonable reunification efforts under the circumstances created by the Parents.

¶11 Jennifer Hoerauf, CPS Regional Administrator, took over the case upon the Department's filing for termination and to be relieved of providing further reunification services. She testified to the Department's extensive efforts to engage Parents while awaiting a ruling on the Department's request to not provide reasonable efforts. Despite Parents' numerous no-shows, the Department continued to offer family visits with gas vouchers to cover transportation costs. Following missed visits, CPS Hoerauf attempted

to reach Parents via telephone—though their contact telephone was frequently disconnected—and sent them letters. She even tried to connect with them through Facebook. Only after Parents missed several visits was the determination made to move Child from close proximity to Parents to a foster placement in the home of her siblings. This determination was made in an attempt to preserve Child's family bonds with siblings as Parents were not productively engaging with Child or the Department.

¶12 Further, CPS Hoerauf personally met with Parents to explain the Department's basis for seeking not to provide services and termination of parental rights. She discussed in detail the Department's concerns—history of drug use, housing instability, and prior established inability to care adequately for their children resulting in multiple terminations—and what actions Parents needed to demonstrate they had changed their conduct and circumstances which impaired their ability to provide appropriate care for their children. Despite being offered the opportunity to demonstrate they had addressed the concern for ongoing drug use, Parents refused to engage with Department-requested UA testing.[4] After discussing with CPS Hoerauf what would be needed for them to demonstrate they had changed their lives and addressed the conduct and conditions which resulted in the prior terminations of their parental rights, the Parents did not request additional services or assistance of the Department. Quite the opposite occurred. The record demonstrates

---

[4] The drug testing of record did nothing to allay the Department's concerns in this regard—showing Mother testing positive for methamphetamine upon delivery of a subsequent child in February 2020, Father admitting in February 2020 he would be positive for methamphetamine, and Mother testing positive for methamphetamine on August 16, 2019.

8

Parents failed to acknowledge any parenting deficits or need to engage in any services and refused to do so without a court order. The record also demonstrates a significant lack of engagement in the most basic aspects of successful parenting. Parents consistently missed scheduled visitations and failed to maintain contact with the Department. Since their last visit in mid-July of 2019, Parents did not contact the Department or make any further inquiry about Child's welfare despite CPS Hoerauf's efforts to reach them via letters of August 1, 2019, September 4, 2019, and September 13, 2019, and email communication to their counsel advising of Parents' lack of participation. Parents did not request the court order a treatment plan on an interim basis pending ruling on the Department's request to not provide further reunification services or request assistance or services directly from the Department. Instead, the Parents disappeared, quitting all engagement, requiring the Department to seek continuance of the termination hearing in order to serve parents by publication.

¶13 "What constitutes reasonable efforts is not static or determined in a vacuum, but rather is dependent on the factual circumstances of each case—the totality of the circumstances—including a parent's apathy and/or disregard for the Department's attempts to engage and assist the parent." *In re R.L.*, ¶ 22. Although the Department was seeking an order from the court permitting it to discontinue reunification services and did not offer Parents formal treatment plans, the Department continuously offered Parents services and engagement which they actively resisted. Parents' apathy and/or active resistance to engagement with the Department, does not constitute failure on the Department's part to

9

provide reasonable efforts. Under the totality of circumstances in this case, the Department provided reasonable efforts to avoid removal and to reunify Parents with Child until receiving the court's order discontinuing its requirement to do so. Had Parents participated in good faith with the Department's engagement services, their arguments now would perhaps be more availing.

¶14 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. In the opinion of the Court, the case presents a question controlled by settled law or by the clear application of applicable standards of review.

¶15 Affirmed.

/S/ INGRID GUSTAFSON

We concur:

/S/ MIKE McGRATH
/S/ LAURIE McKINNON
/S/ JAMES JEREMIAH SHEA
/S/ DIRK M. SANDEFUR