**FILED**

11/29/2016

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 16-0113

DA 16-0113

IN THE SUPREME COURT OF THE STATE OF MONTANA

2016 MT 309

IN THE MATTER OF:

M.V.R.,

        A Youth in Need of Care.

APPEAL FROM:    District Court of the Eighth Judicial District,
In and For the County of Cascade, Cause No. BDN 14-240
Honorable Thomas M. McKittrick, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

        Meri Althauser, Montana Legal Justice, PLLC, Missoula, Montana

        For Appellee:

        Timothy C. Fox, Montana Attorney General, Katie F. Schulz, Assistant
Attorney General, Helena, Montana

        John Parker, Cascade County Attorney, Valerie Winfield, Deputy Cascade
County Attorney, Great Falls, Montana

Submitted on Briefs:  October 5, 2016

Decided:  November 29, 2016

Filed:

                          _____
                                 Clerk

Chief Justice Mike McGrath delivered the Opinion of the Court.

¶1     M.V.R's mother, K.S. (Mother), appeals from an order entered by the Eighth Judicial District Court, Cascade County, terminating her parental rights. We affirm.

¶2     We restate the issues on appeal as follows:

*Issue One:   Did the District Court abuse its discretion when it terminated Mother's parental rights without making specific findings that the Department of Health and Human Services engaged in reasonable efforts to reunite the family pursuant to § 41-3-423(1), MCA?*

*Issue Two:   Did the District Court abuse its discretion when it terminated Mother's parental rights based on a failed treatment plan pursuant to § 41-3-609(1)(f), MCA?*

*Issue Three:   Did the District Court deny Mother due process by failing to reappoint a public defender?*

### FACTUAL AND PROCEDURAL BACKGROUND

¶3     In May 2014, the Department of Health and Human Services (DPHHS) received reports of concern for Mother's three children's welfare based on alleged drug use in the family home. DPHHS, through Child Protective Services social worker Pamela Meyerson (Meyerson), attempted to make contact with the family without success. In October 2014, DPHHS received reports from two doctors' offices stating Mother had brought her children in, concerned they were infested with bugs. No bugs or infestation was present. The doctor's offices believed Mother may have been hallucinating. On October 14, 2014, Meyerson went to the family home in Great Falls, Montana, and spoke to Mother about the children's bug infestations. Meyerson observed no evidence of bugs or infestation on Mother or children. Mother refused to submit to a drug test at that time.

2

¶4 Three days later, when Mother removed the children from public school, Meyerson again went to the home. One child spoke with Meyerson but stated she could not get an adult to wake up. Finally, Mother's boyfriend came to the door and told Meyerson Mother was not home; eventually Mother came out and spoke with Meyerson. Meyerson asked Mother why the children were not in school and if she would submit to a drug test or have the children's hair tested. Mother refused, went back in the house, brought all three children outside to Meyerson and stated "this is what happens when you talk to [DPHHS], now they are going to take you away . . . go ahead, you want to take them, so take them." Meyerson did not take the children.

¶5 On November 5, 2014, Meyerson went to the family's home. The children were not attending school or registered for the home schooling program, Mother refused to submit to a requested drug test, and she denied Meyerson access to the children. The children were removed from Mother's care. On November 12, 2014, the Cascade County Attorney filed a Petition for Emergency Protective Services (EPS), adjudication as youths in need of care, and temporary legal custody. The Department alleged Mother physically neglected the children through her bizarre behavior and suspected methamphetamine use. The District Court granted the State's petition for emergency protective services and appointed Mother a public defender.

¶6 DPHHS referred Mother to Corin Fisch, LCPC-LAC (Fisch) for a chemical dependency evaluation which took place on November 25, 2014. Fisch diagnosed Mother as amphetamine dependent. Mother admitted to using methamphetamine but did

not believe she had an addiction problem or that she needed treatment. Intensive outpatient treatment was recommended given Mother's lack of "treatment readiness."

¶7 On January 9, 2015, at a show cause hearing, Mother fired her public defender and hired private counsel. Mother's new counsel entered a notice of appearance on January 8, 2015, and appeared on her behalf. Mother stipulated to temporary legal custody for six months and that her children were youths in need of care. The District Court approved the treatment plan DPHHS, through Meyerson, had proposed. Although she did not sign the treatment plan, the transcript shows Mother was "willing" and "already actively" working on the plan. Nevertheless, the District Court allowed Mother's private counsel ten days to object to the treatment program. Counsel never objected. Temporary legal custody was ordered on January 15, 2015.

¶8 The treatment plan was designed to "preserve the parent child relationship," "assist Mother in acquiring necessary skills to provide for her children's safety, permanency, and well-being," as well as "assess the family and instill long term change and lasting stability." The plan authorized DPHHS to gather information regarding the children's ability to return home and devise a permanent placement plan if return was not feasible. Specifically, the treatment plan gave Mother six months to stop using illicit drugs and alcohol, maintain sobriety with scheduled and random urinalysis testing, complete mental health and chemical dependency evaluation and counseling, maintain contact with her children, attend parenting classes and submit to home visits, create and maintain a safe and secure home environment including stable employment, and not allow other people to reside in the family's home.

4

¶9 Mother requested referral to an inpatient treatment center in January 2015. Fisch referred her to Montana Chemical Dependency Center (MCDC). Mother missed her first two intake appointments with Dr. Robert Page (Dr. Page), but did meet with him on January 22, 2015, for psychological, mental health, and parenting evaluations. Mother admitted that she had been using methamphetamines since mid-December. Dr. Page believed Mother's substance abuse "created a pattern of neglect of the children," and that Mother was aware she needed inpatient treatment but was "reluctant to actually enroll." Dr. Page determined Mother had co-occurring problems of chemical dependency and mental health. However, Mother needed inpatient chemical dependency treatment first.

¶10 On January 30, 2015, Mother was arrested in Billings for possession of methamphetamine. She entered MCDC on February 9, 2015, discharging herself only a few days shy of the standard 28-day term, on March 2, 2015. Mother began her outpatient treatment with Fisch through individual and group chemical dependency counseling sessions. Mother also began seeing a mental health counselor, Roberta Powell (Powell).

¶11 In the meantime, the biological father of two of Mother's children filed a petition for full custody. At that hearing on March 20, 2015, Mother admitted her addiction had an "atrocious" effect on the children, but that she was 39 days sober and would do anything to get her children back. The District Court lauded her sobriety but based on the pending criminal charges and the "long road" ahead of Mother, the two children were placed with their father. This appeal is limited to Mother's other child, M.V.R.

¶12 Mother appeared on April 3, 2015, for a status hearing represented by her private counsel. Mother was attending most of her chemical dependency outpatient group sessions. Fisch and the counselors were working with Mother trying different groups and approaches. However, Mother's progress began to decline in May 2015.

¶13 Mother's lawyer was granted a motion to withdraw from representation on June 15, 2015. The District Court ordered Mother to find new counsel within 30 days or represent herself.

¶14 Mother attended few chemical dependency outpatient group sessions; June 23, 2015, was the last session she attended. Mother had missed two weeks of her required urinalysis testing and admitted she was using methamphetamine again. She was dismissed from her chemical dependency outpatient treatment program for allegedly attempting to sell methamphetamine to other patients.

¶15 On July 7, 2015, DPHHS petitioned to terminate Mother's parental rights to M.V.R. based on her failure to complete the court approved treatment plan. At the scheduled termination of parental rights hearing on August 6, Mother attended but was unrepresented. The Court and DPHHS agreed Mother should have counsel, and the hearing was continued for four weeks for her to obtain private counsel. At the August 18 hearing, Mother was still without counsel. DPHHS again requested the hearing be continued while Mother obtained legal counsel. The District Court ordered a new hearing and Mother requested a public defender.

¶16 Julie Bass (Bass) was assigned as Mother's new social worker on August 6, 2015. Bass arranged for Mother to take a urinalysis test and then meet with M.V.R. Bass

referred Mother to Stewart McCracken (McCracken), for a chemical dependency evaluation.

¶17 Days before the termination of parental rights hearing, on September 21, 2015, DPHHS requested that temporary legal custody be extended based on Mother's reengagement with services. The Office of Public Defender had appointed Jane Berger (Berger) to represent Mother and she did so at the September 24, 2015 extension of temporary legal custody hearing. DPHHS and the District Court agreed that while Mother's progress had taken steps backward, she was reengaged in services. Temporary legal custody was extended so that Mother could try to make "dramatic improvement."

¶18 Mother participated in chemical dependency outpatient therapy with McCracken but her attendance was sporadic and she was not in compliance with her urinalysis testing. Mother had stopped seeing Powell for mental health counseling and resisted a new mental health counselor. McCracken and Bass encouraged her to attend inpatient treatment; however, Mother was reluctant. Bass helped her find temporary housing for her pets and personally took her for urinalysis testing.

¶19 Mother again entered MCDC on November 18, 2015. Less than one week later, Mother called Bass. Bass and her supervisor explained to Mother that she needed to stay in treatment and establish sobriety because DPHHS would not seek another temporary legal custody extension. Mother agreed to stay but left after less than one week at MCDC. Mother's treatment progress was insignificant. On December 12, 2015, Mother reengaged visits with M.V.R. and Bass referred Mother to a third chemical dependency treatment program, where she began intensive outpatient treatment.

7

¶20 On December 17, 2015, Mother and her public defender Berger appeared for the scheduled permanency plan hearing. DPHHS renewed its termination of parental rights petition and a hearing was set for January 14, 2016. Mother tested positive for methamphetamine on January 5, 2016. Bass testified that Mother's car had been repossessed and her water and heat had been shut off for non-payment. Mother never found a job and could not verify any income.

¶21 On January 14, 2016, the District Court held the final parental rights termination hearing. Mother expressed interest in relinquishing her parental rights but refused a drug test; the State objected, noting that if Mother was under the influence the relinquishment may not be valid. Mother sought to terminate her current public defender during the hearing and asked to stay the hearing until she could hire a new attorney. Mother claimed she had not been in contact with her public defender at any point. The District Court denied the request as a dilatory tactic, observing she had many opportunities to retain and consult with her public defender or an attorney of her choice. The District Court granted DPHHS's petition, terminating Mother's right to parent M.V.R. Mother appeals.

**STANDARD OF REVIEW**

¶22 "This Court reviews a district court's decision to terminate parental rights for an abuse of discretion." *In re T.S.*, 2013 MT 274, ¶ 21, 372 Mont. 79, 310 P.3d 538. A district court's decision to terminate a parent's rights will not be disturbed on appeal unless "there is a mistake of law or a finding of fact not supported by substantial evidence

that would amount to a clear abuse of discretion." *In re A.S.,* 2016 MT 156, ¶ 11, 384 Mont. 41, 373 P.3d 848.

¶23 "We review a district court's findings of fact to determine whether they are clearly erroneous and its conclusions of law to determine whether they are correct." *In re A.S.,* ¶ 11 (2016); *In re T.S.,* ¶ 21. "A factual finding is considered clearly erroneous if it is not supported by substantial evidence, if the district court misapprehended the effect of the evidence underlying the finding, or if a review of the record leaves this Court with a definite and firm conviction that a mistake has been made." *In re D.F.,* 2007 MT 147, ¶ 21, 337 Mont. 461, 161 P.3d 825; *In re D.T.H.,* 2001 MT 138, ¶ 7, 305 Mont. 502, 29 P.3d 1003. An appellant bears the burden of establishing the district court's findings are clearly erroneous. *In re D.F.,* ¶ 22.

¶24 "Whether a person has been denied his or her right to due process is a question of constitutional law, for which this Court's review is plenary." *In re A.S.,* 2004 MT 62, ¶ 9, 320 Mont. 268, 87 P.3d 408.

## DISCUSSION

¶25 *Issue One: Did the District Court abuse its discretion when it terminated Mother's parental rights without making specific findings that the Department of Health and Human Services engaged in reasonable efforts to reunite the family pursuant to § 41-3-423(1), MCA?*

¶26 In Montana DPHHS must make reasonable efforts to prevent removal of a child and reunite a family. Section 41-3-423(1), MCA. The statute does not define "reasonable efforts." *In re J.H.,* 2016 MT 35, ¶ 17, 382 Mont. 214, 367 P.3d 339. However, the statute gives examples of reasonable efforts, which include developing a

voluntary protective services agreement, individual written case plans specifying state reunification efforts, and periodic review. Section 41-3-423(1), MCA. The court must evaluate each case individually and that analysis is highly fact-dependent. *In re J.H.,* ¶ 17. DPHHS is not required to make "herculean efforts." *In re J.H.,* ¶ 17.

¶27 Montana policy is to protect children whose health and welfare are or may be threatened by those responsible for their care; however, this protection must be provided in a manner that preserves family unity, if possible. Section 41-3-101(1)(a), (b), MCA; *In re C.J.*, 2010 MT 179, ¶ 23, 357 Mont. 219, 237 P.3d 1282. When terminating parental rights, the District Court's chief concern is the best interests of the child. *In re T.S.,* ¶ 30 (citing *In re Custody & Parental Rights of D.A.*, 2008 MT 247, ¶ 21, 344 Mont. 513, 189 P.3d 631 (quoting *In re E.K.*, 2001 MT 279, ¶ 33, 307 Mont. 328, 37 P.3d 690)). "Children need not be left to twist in the wind when their parents fail to give priority to their stability and permanency." *In re T.S.,* ¶ 30.

¶28 Mother argues the District Court failed to address the reasonable efforts made by DPHHS, thus violating her due process rights. Mother argues that DPHHS did not engage in reasonable efforts to reunite the family or to ensure she would complete the treatment plan approved by the District Court. The record clearly shows that DPHHS made reasonable efforts to reunite the family.

¶29 DPHHS created and Mother did not challenge the treatment plan. The plan was designed to preserve the parent child relationship, assist Mother in acquiring necessary skills to provide for her children's safety, permanency, and well-being, and inform DPHHS regarding the children's ability to return home. The plan required Mother to

10

stop using illicit drugs and alcohol, maintain sobriety, complete mental health and chemical dependency evaluations and counseling, maintain contact with her children, attend parenting classes and submit to home visits, create and maintain a safe and secure home environment including stable employment, and not allow other people to reside in the family's home.

¶30 DPHHS provided Mother with many resources including outpatient narcotic treatment programs, group and individual counseling, parenting support, two case workers, two stints in MCDC, and weekly visits with M.V.R. Further, DPHHS continually accepted Mother back after she relapsed. DPHHS twice moved for an extension of M.V.R.'s temporary legal custody in order to help Mother complete her treatment plan. DPHHS gave Mother fourteen months to get clean and comply with the treatment plan before her parental rights to M.V.R. were terminated.

¶31 Section 41-3-423(1), MCA, is satisfied when the district court record shows reasonable efforts were made to reunite the family. Here, the record clearly shows reasonable efforts were made to reunite the family.

¶32 *Issue Two: Did the District Court abuse its discretion when it terminated Mother's parental rights based on a failed treatment plan pursuant to § 41-3-609(1)(f). MCA?*

¶33 When a child has been adjudicated as a youth in need of care, the district court may terminate the parent-child relationship if, by clear and convincing evidence, it finds both of the following exist: (i) a court approved appropriate treatment plan has not been complied with by the parents or has not been successful; and (ii) the conduct or condition

11

of the parents rendering them unfit to care for the child is unlikely to change within a reasonable time. Section 41-3-609(1)(f) (i), (ii), MCA; *In re D.F.*, ¶ 23.

¶34 Mother argues the District Court's determination that the condition which rendered her unfit was unlikely to change within a reasonable time was not supported by substantial evidence, thus violating the statutory requirements for termination of parental rights and her due process entitlement to fundamentally fair procedures; that the six-month deadline for her treatment plan was unreasonable and given more time and more resources she could have been successful; that the District Court failed to make findings that DPHHS engaged in reasonable efforts; and that DPHHS did not engage in reasonable efforts to ensure she would complete the treatment plan approved by the District Court.

¶35 DPHHS must prove by clear and convincing evidence each statutory criteria for termination of parental rights. Section 41-3-422(5)(a)(iv), MCA; *In re K.L.,* 2014 MT 28, ¶ 14, 373 Mont. 421, 318 P.3d 691. This Court defines clear and convincing evidence in a parental rights case to mean "a preponderance of the evidence must be definite or that a particular issue must be established by a clear preponderance of proof." *In re T.D.H.*, 2015 MT 244, ¶ 28, 380 Mont. 401, 356 P.3d 457.

¶36 When determining "whether the conduct or condition of the parent is unlikely to change" the court shall enter a finding that continuation of the parent-child legal relationship will likely result in continued abuse or neglect, or that the conduct or the condition of the parents renders them unfit, unable, or unwilling to give the child adequate parental care. Section 41-3-609(2), MCA.

¶37 The court shall consider, but is not limited to the following:

> (a) Emotional illness, mental illness, or mental deficiency of the parent of a duration or nature as to render the parent unlikely to care for the ongoing physical, mental, and emotional needs of the child within a reasonable time;
> (b) a history of violent behavior by the parent;
> (c) excessive use of intoxicating liquor or of a narcotic or dangerous drug that affects the parent's ability to care and provide for the child; and
> (d) present judicially ordered long-term confinement of the parent.

Section 41-3-609(2)(a)-(d), MCA; *In re D.F.*, ¶ 23. Additionally, "the court shall give primary consideration to the physical, mental, and emotional conditions and needs of the child," and the court may "assess the parent's past and present conduct." Section 41-3-609(3), MCA; *In re T.D.H.*, ¶ 33.

¶38 Here the District Court adjudicated M.V.R. as a youth in need of care. The District Court approved a reasonable and appropriate treatment plan for Mother. The record shows, and the District Court's conclusions of law found, Mother failed to comply with or complete the treatment plan. Further, the District Court found the conduct or condition rendering Mother unfit, her abuse of methamphetamine, was unlikely to change within a reasonable time. Section 41-3-609(1)(f)(ii), MCA.

¶39 It is clear from the record that Mother was unable, or unwilling, to abstain from methamphetamines. Neither the record nor her previous behavior supports her assertion that she just needed more time or that alternate treatment was not provided. Shortly after M.V.R. was removed from her care, Mother was arrested for possession of dangerous drugs. Mother failed to provide consistently clean urine samples until more than one year after M.V.R. was removed. Mother failed to complete two twenty-eight-day inpatient

13

treatment programs at MCDC, one shortly after M.V.R. was removed and one shortly before her parental rights to M.V.R. were terminated. The outpatient chemical dependency treatment program terminated Mother's participation after she was found attempting to sell methamphetamine to the other patients.

¶40 The District Court found "by clear and convincing evidence, that continuation of the parent-child legal relationship between the Youth and the Birth Mother will result in an ongoing risk of abuse and/or neglect to the Youth." Further, the District Court found "the best interests of the Youth's physical, mental, and emotional condition will be served by termination of the parent-child legal relationship."

¶41 Section 41-3-609(1)(f), MCA, does not require a specific finding by the District Court that DPHHS engaged in reasonable efforts before terminating a parent child relationship. Section 41-3-609(1)(f), MCA; *see In re D.B.*, 2007 MT 246, ¶¶ 25, 26, 339 Mont. 240, 168 P.3d 691.

¶42 The decision to terminate Mother's parental rights to M.V.R. was supported by substantial evidence. The District Court did not err in its findings of fact.

¶43 *Issue Three:  Did the District Court deny Mother due process by failing to reappoint a public defender?*

¶44 Montana's jurisprudence establishes that a "natural parent's right to the care and custody of his or her child is a fundamental liberty interest which must be protected by fundamentally fair procedures." *In re A.S.,* ¶ 12 (2004) (citing *Santosky v. Kramer,* 455 U.S. 745, 102 S. Ct. 1388 (1982));  *In re A.C.*, 2001 MT 126, ¶ 20, 305 Mont. 404, 27 P.3d 960. Due process requires a parent not be placed at an "unfair disadvantage" during

State proceedings to terminate the parent's liberty interest in the care and custody of a child. *In re A.S.A*, 258 Mont. 194, 198, 852 P.2d 127, 129 (1993). "Fundamental fairness requires that a parent be represented by counsel at proceedings to terminate parental rights." *In re A.S.*, ¶ 12 (2004).

¶45 In 2004, when we decided *In re A.S.*, the right to counsel had not attached to all stages of termination proceedings. *In re A.S.* (2004). "In 2005, the Montana Legislature granted indigent parents a statutory right to appointed counsel in all abuse and neglect proceedings involving any petition filed pursuant to § 41-3-422, MCA." *In re J.J.L.*, 2010 MT 4, ¶ 16, 355 Mont. 23, 223 P.3d 921. Specifically, § 41-3-425(1), MCA, gives any party involved in a petition under § 41-3-422, MCA, the right to counsel in all proceedings. Section 41-3-425(1), MCA. The court is required to "immediately appoint the office of state public defender to assign counsel for any indigent parent" so long as that parent qualifies pursuant to § 47-1-111(2), MCA. Section 41-3-425(2)(a), MCA.

¶46 Mother argues that the District Court violated her due process right to counsel when it failed to immediately appoint a public defender for her when her private counsel withdrew and she was without counsel from June 15 to September 21, 2015.

¶47 Mother was assigned a public defender in December 2014 and had terminated the public defender in January 2015, hiring her own private counsel. In June 2015, Mother's private counsel was granted leave by the District Court to withdraw from representing Mother. In accordance with Rule 10(b) of Montana Uniform District Court Rules, Mother was informed she was entitled to appoint other counsel or represent herself. Mother made no indication she desired a public defender at that time.

15

¶48 At the hearing to terminate Mother's parental rights on August 6, 2015, Mother was without counsel. The transcript shows the State immediately acknowledged that Mother was without counsel, agreed she should have counsel present, and moved to have a public defender appointed. Mother spoke with the regional deputy public defender outside of the courtroom. He encouraged Mother to immediately come to his office after the hearing so she could obtain counsel. Mother failed to go to the public defender's office.

¶49 At the next hearing, on August 18, 2015, Mother had yet to go to the public defender's office or obtain private counsel. The hearing was continued for four weeks and a public defender, Berger, was appointed for Mother. At the September 24, 2015 hearing Mother failed to appear. Berger informed the District Court that Mother had never contacted her or the public defender's office and the phone number on file for Mother was out of date; no contact between Berger and Mother had occurred. The hearing was again continued until December 17, 2015. Berger represented Mother throughout the termination proceeding.

¶50 Mother was aware of what was required to obtain a public defender; she had a public defender during these proceeding and in other previous and contemporaneous proceedings. Mother was not denied counsel. Mother voluntarily terminated her public defender and hired private counsel. When private counsel withdrew, the District Court informed Mother of her duty to find new counsel. Mother never requested a new public defender and the District Court reasonably concluded that she would hire new counsel. While it does not take "particular words" to request counsel, some indication must be

16

given to the court that respondent wishes for appointed counsel based on indigence. *J.M. v. R.H. (In re J.W.M.),* 2015 MT 231, ¶ 25, 380 Mont. 282, 354 P.3d 626.

¶51 Due process and § 41-3-425, MCA, give parents at risk of having their parental rights terminated the right to counsel and the right to appointed counsel if indigent, at all termination proceedings. The District Court properly appointed a public defender for Mother immediately upon initiation of these proceedings. Once she was without any counsel, Mother needed to indicate to the District Court, in any manner, that she needed another public defender. When notified that Mother did not have counsel, the District Court ordered one be appointed and twice continued the proceedings. Mother failed to follow through to engage another public defender. However, at all critical stages of the proceeding Mother was represented by counsel.

¶52 Under these facts, Mother's due process right was not infringed when she was without counsel.

## CONCLUSION

¶53 It was not an abuse of discretion for the District Court to terminate Mother's rights to M.V.R. Although Mother failed to cooperate with getting a new attorney appointed, Mother had counsel at all critical stages of these proceedings. Her due process rights were not infringed.

¶54 Affirmed.

/S/ MIKE McGRATH

17

We Concur:

/S/ LAURIE McKINNON
/S/ PATRICIA COTTER
/S/ BETH BAKER
/S/ JIM RICE