FILED

09/28/2021

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 21-0090

DA 21-0090

IN THE SUPREME COURT OF THE STATE OF MONTANA

2021 MT 251N

IN THE MATTER OF:

D.R.V.,

    A Youth in Need of Care.

APPEAL FROM:    District Court of the Thirteenth Judicial District,
In and For the County of Yellowstone, Cause No. DN 19-184
Honorable Mary Jane Knisely, Presiding Judge

COUNSEL OF RECORD:

    For Appellant:

    Kelly M. Driscoll, Driscoll Hathaway Law Group, Missoula, Montana

    For Appellee:

    Austin Knudsen, Montana Attorney General, Jonathan M. Krauss, Assistant
Attorney General, Helena, Montana

    Scott D. Twito, Yellowstone County Attorney, Amanda Tiernan, Deputy
County Attorney, Billings, Montana

Submitted on Briefs:  September 1, 2021

Decided:  September 28, 2021

Filed:

_____
Clerk

Justice Laurie McKinnon delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 Appellant, D.M.V. (Mother), appeals an order and judgment issued on January 26, 2021, by the Thirteenth Judicial District Court, Yellowstone County, terminating her parental rights over her eleven-year-old biological son, D.R.V. We affirm the decision of the District Court to terminate Mother's parental rights.

¶3 On May 16, 2019, the Child and Family Services Division of the Montana Department of Public Health and Human Services (the Department) filed a petition for emergency protective services, adjudication of D.R.V. as a youth in need of care (YINC), and temporary legal custody of D.R.V.[1] The Department's petition was based on an affidavit from a Department Child Protective Specialist (CPS). The affidavit cited concerns related to methamphetamine use and distribution by D.R.V.'s parents, with whom D.R.V. lived at the time. The affidavit described D.R.V.'s former home as a "typical meth house with loose electrical wiring everywhere." The affidavit also reported that D.R.V. was frequently left at home without adults for extended periods of time and that D.R.V.

---

[1] Around this same time, the Department also filed a separate petition for temporary legal custody of D.R.V.'s older sister, O.R.V. However, O.R.V. turned eighteen years old during the course of these proceedings and is not a party to this appeal.

often went hungry. Based on these facts, the Department's petition alleged physical neglect of D.R.V. by Mother and by D.R.V.'s adoptive father, J.R.V. (Father).[2]

¶4 On June 3, 2019, D.R.V. was adjudicated as a YINC and temporary legal custody was granted to the Department. Mother stipulated to this adjudication without objection. Mother also agreed to complete a court-ordered treatment plan on this date. Amongst other requirements, Mother's treatment plan stipulated that she would schedule and complete a chemical dependency evaluation from a Department-approved provider, schedule and complete a mental health assessment from an approved provider, and "follow all recommendations" from these providers. The treatment plan also required Mother to schedule and attend individual counseling from an approved provider, submit to random drug testing, and attend Department-supervised parental visits with D.R.V. According to the District Court, the purpose of this treatment plan was to rehabilitate Mother's parenting skills for the purpose of reuniting her with D.R.V. As of May 16, 2019, the Department placed D.R.V. in kinship foster care with his maternal aunt in Shepherd, Montana. Reports from D.R.V.'s Court Appointed Special Advocate (CASA) indicate that D.R.V. has remained "happy and safe" with his aunt for the duration of these proceedings.

¶5 As of Mother's August 5, 2019, status hearing, she had completed a chemical dependency evaluation and had enrolled in once-per-week drug treatment sessions at the Rimrock Foundation addiction treatment facility (Rimrock) in Billings, MT. As of August

---

[2] Father was arrested on October 21, 2019, on federal drug and firearm charges. Father pled guilty and was sentenced to federal prison on October 23, 2020. Father's parental rights to D.R.V. were eventually terminated by the same January 2021 District Court order as Mother's. Father currently remains in prison and is not a party to this appeal.

5, 2019, Mother was also attending Department-supervised visits with D.R.V. and had begun to undergo randomized drug testing via a drug-testing patch; however, Mother was still testing positive for high levels of methamphetamine at this time. Also, as of this appeal, Mother has never scheduled a mental health assessment with an approved provider.

¶6 At a September 4, 2019, meeting with a Department CPS, Mother informed the CPS that she had not attended any treatment sessions at Rimrock in over 30 days because her Medicaid insurance had been erroneously deactivated in early August 2019. Mother would later confirm that, as of November 2019, her Medicaid coverage had been reinstated. Nevertheless, as of September 2019, Mother was no longer participating in her required drug treatment program at Rimrock. Mother also ceased participation in randomized drug testing at this same time. Going forwards, despite continuous outreach efforts by the Department to Mother, the record indicates that Mother never again participated in randomized drug testing, nor did she return to Rimrock or engage in any other drug treatment program up through the time of her appeal.

¶7 In November 2019, Mother's trailer home was ruined in a storm, rendering her homeless. Mother later informed the District Court that she has been "staying with a friend" since this date. The Department provided contact information to help Mother apply for and find new housing, but Mother ultimately did not take any action.

¶8 On December 12, 2019, the Department filed a petition to extend temporary legal custody based on a new affidavit from a Department CPS. The affidavit asserted that additional time was needed for Mother to complete her treatment plan and that Mother had not yet addressed her methamphetamine use. The affidavit also noted that Mother had yet

4

to address the safety concerns related to her (prior) trailer home that had led to D.R.V.'s temporary removal. On January 6, 2020, the District Court held a hearing on the Department's petition to extend temporary legal custody. Mother was not in attendance, but her attorney indicated that Mother had reviewed both the new petition and the new CPS affidavit and did "not voice any objection." On January 9, 2020, the District Court issued an order granting an extension of temporary legal custody to the Department, and Mother stipulated to this order.

¶9      In February 2020, Mother informed the Department that she had been let go from her job in January of 2020. Mother would remain without a job for the rest of these proceedings.

¶10      In March 2020, a CPS informed Mother that the Department had submitted a new treatment referral for her to attend online/virtual treatment sessions at Rimrock subject to that provider's new COVID-19 protocols, but Mother did not enroll. During a phone call with this same CPS on April 21, 2020, Mother stated that she had contacted Rimrock, "but declined to begin treatment, as she [did] not feel she would do well with online groups and counseling." During this phone call, the CPS informed Mother that the Department would be filing for permanent legal custody of D.R.V.

¶11      On May 11, 2020, the Department filed a petition for permanent legal custody and termination of Mother's parental rights. The petition was based on a new CPS affidavit stating that Mother had not made any progress on her treatment plan goals nor met the necessary conditions for the return of D.R.V. to her care. The affidavit stated that Mother "ha[d] struggled to obtain housing and ha[d] not yet engaged in treatment to address her

chemical dependency." On June 25, 2020, D.R.V.'s CASA submitted a formal CASA report recommending parental termination on the grounds that Mother "ha[d] not completed her [treatment plan]" and that she did not "hav[e] a current residence."

¶12 On November 2 and 5, 2020, the District Court held hearings on the Department's petition for parental termination. At these hearings, a CPS testified that the only treatment plan task successfully completed by Mother during the then seventeen-month-duration of her case was "going to visits [with D.R.V.]" and "nothing else." The CPS also testified that the Department's visitation center noted that Mother's scheduled visits with D.R.V. had been "very inconsistent" and that Mother had missed multiple visits without first notifying the visitation center.

¶13 During the November 2020 hearings, Mother testified that "[she had] not successfully completed [her] treatment plan." Mother also testified that, since ending her weekly sessions at Rimrock in August of 2019, she had not sought to re-engage in any form of Department-approved drug counseling, despite this being a requirement of her stipulated treatment plan. Similarly, Mother also admitted that she had not, at any point, participated in a mental health assessment nor otherwise attended any mental health treatment sessions since the treatment plan was implemented. Nevertheless, Mother asserted in her testimony that she would be able to successfully complete her treatment plan going forward if she were granted additional time to do so.

¶14 D.R.V.'s therapist, Dr. Kelly Ogger (Dr. Ogger), also testified during the November 2020 hearings. Dr. Ogger stated that D.R.V. had developed ongoing mental health issues related to his parents' lack of consistency and the trauma that he was exposed to while in

6

their care.  Dr. Ogger also testified that lengthy reunification therapy, consistency with visits, and individual therapeutic services for D.R.V.'s mother would likely be needed before reunification could occur.

¶15 On January 26, 2021, the District Court issued an order terminating Mother's parental rights.  The District Court's findings of fact included the following statement:

> [I]t is clear that [Mother] has not made any progress on her treatment plan and will not be able to do so within a reasonable amount of time.  [Mother] failed to address the issues that led to the Department's involvement.  She has not addressed her substance abuse or mental health concerns.  She has less stability now than when the case began, she does not have housing or employment and struggles to demonstrate any kind of consistency.

The District Court's order further concluded that Mother had not successfully completed her treatment plan and that Mother's conduct was unlikely to "change within a reasonable time," thereby warranting the termination of Mother's parental rights under Montana's relevant legal standard, § 41-3-609(1)(f)(i)-(ii), MCA ("Criteria for [parental] termination").  The District Court further concluded that continuation of the parent-child relationship "will likely result in continued abuse and neglect" and that "[t]he conduct and condition of [Mother] renders her unfit, unwilling, or unable to provide [D.R.V.] with adequate parental care."  On February 23, 2021, Mother filed a notice of appeal with this Court.  Mother's appeal challenges the District Court's decision to terminate her parental rights.

¶16 This Court reviews a district court's decision to terminate parental rights for an abuse of discretion, considering the applicable standards of Title 41, chapter 3, MCA.  *In re D.D.*, 2021 MT 66, ¶ 9, 403 Mont. 376, 482 P.3d 1176; *In re D.E.*, 2018 MT 196, ¶ 21, 392

Mont. 297, 423 P.3d 586. In interpreting these statutes, "a court abuses its discretion if it terminates parental rights based on clearly erroneous findings of fact, erroneous conclusions of law, or otherwise acts arbitrarily, without employment of conscientious judgment, or exceeds the bounds of reason resulting in substantial injustice." *In re D.D.*, ¶ 9; *In re D.E.*, ¶ 21.

¶17 Section 41-3-609(1)(f)(i)-(ii), MCA, states that a court may order termination of parental rights upon finding—by clear and convincing evidence—that:

> [T]he child is an adjudicated youth in need of care and both of the following exist:
> (i) an appropriate treatment plan that has been approved by the court has not been complied with by the parents or has not been successful; and
> (ii) the conduct or condition of the parents rendering them unfit is unlikely to change within a reasonable time.

¶18 Mother's appeal does not contest D.R.V.'s status as an adjudicated YINC, nor does it contest the fact that Mother failed to complete her court-approved treatment plan. Instead, Mother's appeal argues that the District Court abused its discretion when it terminated Mother's parental rights because the Department allegedly did not meet its statutory burden of showing that the conduct of Mother was "unlikely to change within a reasonable time," as required by § 41-3-609(1)(f)(ii), MCA. Instead, Mother's appeal argues that an extension of temporary legal custody—rather than the permanent termination of Mother's parental rights—was the proper disposition in this matter.

¶19 When issuing a finding that the conduct or condition of parents is "unlikely to change within a reasonable time" under § 41-3-609(1)(f)(ii), MCA, a court is statutorily permitted to consider a variety of factors specific to the factual circumstances of an

individual case.[3] Section 41-3-609(2), MCA. Mother's appeal asserts that Mother still remains "likely to change within a reasonable time" on three separate grounds: (1) that Mother only failed to complete her in-patient drug treatment program due to an unexplained lapse in her Medicaid coverage; (2) that due to the scaled-back activity of the Department during the COVID-19 pandemic, the Department failed to provide Mother with "reasonable efforts" to assist her in completing her treatment plan; and (3) that Mother's allegations of domestic violence committed by her husband were not properly considered by the District Court in evaluating the progress that she made on her treatment plan.

¶20 After considering each of Mother's arguments, we are not convinced that Mother would be "likely to change within a reasonable time." First, Mother's appeal argues that Mother remains likely to change because she would have completed her in-patient drug treatment sessions at Rimrock in 2019 were it not for an unexplained lapse in her Medicaid coverage. Mother's appeal implies that this unanticipated lapse in coverage began in August 2019 and caused Rimrock to cancel her remaining weekly appointments after she had attended just four sessions. However, Mother's own testimony from the November 2, 2020, hearing notes that her lapse in Medicaid coverage lasted no more than "four months."

---

[3] Additionally, when determining whether a parent's conduct or condition is "unlikely to change within a reasonable time," § 41-3-609(2), MCA, requires a court to "enter a finding that continuation of the parent-child legal relationship will likely result in continued abuse or neglect or that the conduct or the condition of the parents renders the parents unfit, unable, or unwilling to give the child adequate parental care." The District Court's January 2021 order correctly entered a finding that continuing Mother's parent-child relationship with D.R.V. would "result in continued abuse or neglect" of D.R.V.

9

Moreover, at the November 5, 2020, hearing, Mother testified that her lapse in coverage may have been for an even shorter duration than four months, as she stated during questioning that she believed her Medicaid coverage was actually reinstated "by August or September of 2019." Regardless of the precise timeline of this lapse in coverage, Mother nevertheless failed to continue her treatment plan at Rimrock or seek any additional drug treatment once her Medicaid was reinstated—a fact which Mother also admitted to during her November 2020 testimony. In the time since Mother's Medicaid coverage was reinstated and her appeal, which was filed in February of 2021, Mother had, at minimum, fifteen months to recommence her drug treatment sessions and still failed to do so. Thus, the District Court did not fail to adequately consider Mother's lapse in Medicaid coverage in its ruling that Mother was not "likely to change within a reasonable time."

¶21 Second, Mother's appeal asserts that the unique circumstances of the COVID-19 pandemic hindered her ability to successfully complete her treatment plan. Specifically, Mother argues that, as of March 2020, the Department—by offering a more limited array of in-person services in response to the COVID-19 pandemic—failed to make "reasonable efforts" to assist her in completing her treatment plan. Indeed, this Court has previously held that "[a]lthough determination of whether the Department made *reasonable efforts* is not a separate requirement for termination, it may be a predicate for finding that . . . [a] parent is unlikely to change within a reasonable time—one of the factors required for termination of a parent's rights." *In re R.L.*, 2019 MT 267, ¶ 18, 397 Mont. 507, 452 P.3d 890 (emphasis added). In *R.L.*, this Court further clarified that "[w]hat constitutes reasonable efforts is not static or determined in a vacuum, but rather is dependent on the

10

factual circumstances of each case." *In re R.L.*, ¶ 22. Under this precedent, Mother argues that the Department's temporary cessation of in-person visitation with D.R.V.—which occurred at the same time that several Department-approved treatment providers also ceased offering in-person appointments—did not meet the threshold of "reasonable efforts," and thus hampered her ability to successfully visit with D.R.V. and complete the other aspects of her treatment plan.

¶22 Nevertheless, we find that the Department's efforts to assist Mother in completing her treatment plan were reasonable under the factual circumstances. First, as Mother's appeal notes, the services required by her treatment plan—including visitation with D.R.V. and meetings with Department-approved treatment providers—were still made available *virtually* beginning in March 2020. Given the public health dangers posed by in-person gatherings after the onset of the COVID-19 crisis, the switch to virtual child visitation by the Department—as well as the switch to virtual treatment sessions by the Department's approved treatment providers—was highly reasonable. Moreover, although Mother alluded to the fact that she may not have had access to a computer during her November 2020 testimony, Mother's appeal does not clarify whether this was indeed the case. Mother's appeal also does not argue at any point that she lacked the requisite internet or computer access needed to schedule and attend virtual appointments with D.R.V. and with approved treatments providers. Instead, the record indicates that Mother's lack of engagement with the Department and its approved treatment providers after March 2020 is

11

largely of her own accord[4]—a finding which is also consistent with the pattern of disinterest in completing her treatment plan that Mother had already demonstrated prior to March 2020, during the first ten months of her treatment plan. As this Court has previously held, "apathy and/or active resistance to engagement with the Department [by a parent] does not constitute failure on the Department's part to provide reasonable efforts." *In re R.L.*, ¶ 22.

¶23 The third and final argument in Mother's appeal alleges that, in the time since D.R.V.'s case was first adjudicated, she experienced domestic violence from her husband (Father), which harmed her ability to successfully complete her treatment plan. Specifically, Mother's appeal alleges that she "repeatedly disclosed allegations of domestic violence by [Father] to the Department, yet there was an absence of [domestic violence] services directed at Mother" by the Department. Mother's appeal claims the District Court's ruling failed to properly account for this fact. However, the District Court record reveals that, in October 2019, in response to Mother's reports of violence and threats from Father, the Department expressly offered to help Mother go to the police and file a restraining order against him. Additionally, in January 2020, in response to Mother's assertion that she remained fearful of her husband, the Department gave Mother contact information for the sheriff's office, the YWCA, and a women's shelter. However, Mother admitted during her November 2020 testimony that she never followed up on these offers of assistance. Moreover, the record indicates that Father has been incarcerated since

---

[4] An affidavit from a CPS dated May 11, 2020, indicates that, as of April 2020, Mother had gotten back in touch with the Rimrock treatment center in Billings. However, that same affidavit also states that Mother told the Department that she refused to begin treatment virtually because she did "not feel she would do well with online groups and counseling."

12

October 2019, significantly restricting his contact with, and access to, Mother for the majority of the time that her treatment plan was in place. For these reasons, the District Court did not abuse its discretion by failing to give appropriate weight to Mother's allegations of domestic abuse in terminating her parental rights.

¶24 We affirm the District Court's determination that Mother is "unlikely to change within a reasonable period of time" and uphold the termination of her parental rights under § 41-3-609(1)(f)(i)-(ii), MCA. In deciding whether to terminate parental interests under Title 41 of the Montana Code, the "chief concern" must ultimately be "the best interests of the child." *In re M.V.R.*, 2016 MT 309, ¶ 27, 385 Mont. 448, 384 P.3d 1058; *In re T.S.*, 2013 MT 274, ¶ 30, 372 Mont. 79, 310 P.3d 538. Although this Court is sympathetic to Mother's unfortunate circumstances, none of Mother's arguments on appeal adequately address how the extension of temporary legal custody that she requests would be in D.R.V.'s best interests. At the time of this appeal, Mother remains homeless, is without a job, and continues to suffer from debilitating substance abuse issues—all of which severely harm her ability to effectively care for D.R.V. Mother's appeal fails to inspire confidence that any of these factors will change in the foreseeable future, nor does her appeal contain any blueprint as to *how* Mother plans to change her situation going forward.

¶25 This Court has also noted that, when making a decision regarding parental termination, "[c]hildren need not be left to 'twist in the wind' when their parents fail to give priority to their stability and permanency." *In re T.S.*, ¶ 30 (citations omitted). The November 2020 testimony of Dr. Ogger, D.R.V.'s therapist, lends further credence to this point and illustrates D.R.V.'s strong need for permanency in his living situation:

13

I think most importantly what's in his best interests is that permanency of some sort . . . for [D.R.V.]. He has been living in this limbo land where he doesn't know [if] he should attach where he is, if he is going home. He's . . . unable to work on . . . a lot of his trauma and things that we are trying to do in counseling, because I think he's still unsure of what's going to happen next. I think for [D.R.V.], the important thing is to let him have some kind of idea of what is going to happen for him, where is he going to be; because that will allow him, then, to start to move forward. . . .

¶26 We affirm the decision of the District Court to terminate Mother's parental rights under § 41-3-609(1)(f)(i)-(ii), MCA, and grant permanent legal custody of D.R.V. to the Department.

¶27 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. This appeal presents no constitutional issues, no issues of first impression, and does not establish new precedent or modify existing precedent.

¶28 Affirmed.

/S/ LAURIE McKINNON

We concur:

/S/ MIKE McGRATH
/S/ JAMES JEREMIAH SHEA
/S/ DIRK M. SANDEFUR
/S/ JIM RICE

14