DA 25-0027

IN THE SUPREME COURT OF THE STATE OF MONTANA

2025 MT 229N

_____

IN THE MATTER OF:

K.B. and B.B.-R.,

      Youths in Need of Care.

_____

APPEAL FROM:    District Court of the Seventh Judicial District,
In and For the County of Dawson, Cause Nos. DN-21-04 and
DN-21-05
Honorable Olivia Rieger, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

      Laura Reed, Attorney at Law, Missoula, Montana

      For Appellee:

      Austin Knudsen, Montana Attorney General, Thad Tudor, Assistant
Attorney General, Helena, Montana

      Brett Irigoin, Dawson County Attorney, Cody Lensing, Deputy
County Attorney, Glendive, Montana

_____

      Submitted on Briefs:  July 23, 2025

      Decided:  October 7, 2025

Filed:

_____
               Clerk

Justice Ingrid Gustafson delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 A.C. (Mother) appeals from the September 27, 2024 Order Terminating Parental Rights issued in cause number DN-21-05 and the September 30, 2024 Order Terminating Parental Rights issued in cause number DN-21-04 by the Seventh Judicial District Court, Dawson County, which terminated her parental rights to her children K.B. and B.B.-R.[1] We affirm.

¶3 The Montana Department of Public Health and Human Services, Child and Family Services Division (Department), received reports regarding Mother's ability to safely parent K.B. and B.B.-R. The reports indicated the children, among other things, had a lack of hygiene, were exposed to physical abuse, excessive discipline, domestic violence, and drug use in the home Mother shared with her boyfriend P.H. in Glendive, and had been left with inappropriate caregivers. The children were removed by the Department and placed with Mother's ex-husband, T.C., father of two of K.B. and B.B.-R.'s maternal half-siblings, on February 10, 2021.

---

[1] This Court affirmed the District Court's order terminating the parental rights of J.G., K.B.'s birth father, in *In re K.B.*, No. DA 24-0640, 2025 MT 164N, 2025 Mont. LEXIS 855. A.R, B.B.-R.'s putative birth father, was served by publication in the proceedings below but never appeared and did not appeal the order terminating his parental rights.

¶4 On February 16, 2021, the Department filed a Petition for Emergency Protective Services (EPS) and Temporary Investigative Authority (TIA). The District Court granted an order continuing EPS and granting TIA on March 15, 2021, after Mother stipulated to the relief requested in the Department's petition. On May 17, 2021, the Department filed a Petition for Adjudication of Child as Youth in Need of Care (YINC) and Temporary Legal Custody (TLC). Mother stipulated to the relief in the Department's petition on June 1, 2021, and the District Court issued its Findings of Fact, Conclusions of Law and Order Adjudicating Child as Youth in Need of Care and Granting Temporary Legal Custody on June 4, 2021. The court approved Mother's treatment plan on June 8, 2021, with tasks related to attending visitations, participating in mental health services, taking parenting classes, demonstrating legal income and stable housing, and maintaining contact with the Department. The court issued an order extending TLC on November 30, 2021.

¶5 Mother moved to Stanley, North Dakota, in late 2021, to live with J.G., K.B.'s birth father. While Mother had begun to work on some aspects of her treatment plan prior to leaving Montana, she struggled to obtain services in North Dakota. Mother was attending visits, however, and the Department ultimately decided to place both K.B. and B.B.-R. with Mother and J.G. in Stanley for a trial home visit, which began on May 27, 2022. B.B.-R. exhibited disturbing behaviors while on the home visit in North Dakota, and Mother voluntarily returned him to his kinship placement in Montana on September 15, 2022. Based on the recommendation of B.B.-R.'s therapist, the Department was seeking a therapeutic group home placement. On November 15, 2022, Intermountain Group Home in Helena accepted B.B.-R. for placement. T.C. and the rest of his family thereafter moved

3

from Glendive to Lincoln to be closer to B.B.-R.  K.B. remained with Mother and J.G. in Stanley for several months after Mother voluntarily returned B.B.-R. to Montana, but her behavior also deteriorated, and the Department removed her from the home visit and returned her to Montana on April 21, 2023.  Initially placed into foster care, K.B. was ultimately returned to a kinship placement with T.C. and moved to Lincoln.  The District Court issued several orders extending TLC to allow Mother more time to complete her treatment plan during 2022, 2023, and 2024.

¶6     The Department filed its petition for termination of Mother's parental rights on June 7, 2024.  By that time, Mother had only made five visits to see the children after K.B. had been returned to Montana over a year earlier.  The District Court held a termination hearing on August 21 and 22, 2024, where it heard the testimony of Dr. Brenda Roche; Joanne Hynes, the children's therapist; Mother; Child Protection Specialist (CPS) Laura Moser; and A.E., T.C.'s long-term live-in girlfriend.  The District Court issued its written order terminating Mother's parental rights to K.B. on September 27, 2024, and a separate written order terminating Mother's parental rights to B.B.-R. on September 30, 2024.

¶7     We review a court's decision to terminate parental rights for abuse of discretion. *In re B.J.B.*, 2025 MT 116, ¶ 5, 422 Mont. 224, 569 P.3d 584.  An abuse of discretion occurs when a district court acts arbitrarily, without employment of conscientious judgment, or exceeds the bounds of reason resulting in substantial injustice.  *In re X.M.*, 2018 MT 264, ¶ 17, 393 Mont. 210, 429 P.3d 920 (citing *In re K.A.*, 2016 MT 27, ¶ 19, 382 Mont. 165, 365 P.3d 478).  We review a district court's findings of fact for clear error

and its conclusions of law for correctness. *In re M.V.R.*, 2016 MT 309, ¶ 23, 385 Mont. 448, 384 P.3d 1058.

¶8      Mother asserts the Department failed to provide reasonable efforts to help her complete her treatment plan while she lived in North Dakota and that she should have been permitted additional time to demonstrate she could care for the children.  The State contends it made reasonable efforts to reunify Mother with the children but those efforts failed because Mother did not respond to the efforts and her conduct was unlikely to change.

¶9      A court may terminate parental rights when (1) a child has been adjudicated as a YINC; (2) an appropriate treatment plan approved by the court has not been complied with by the parent or has not been successful; and (3) the conduct or condition of the parent rendering the parent unfit is unlikely to change within a reasonable time. Section 41-3-609(1)(f), MCA.  Each factor must be supported by clear and convincing evidence.  Section 41-3-609(1), MCA.  In determining whether the conduct or condition of the parent is likely to change within a reasonable time, "the court shall enter a finding that continuation of the parent-child legal relationship will likely result in continued abuse or neglect or that the conduct or the condition of the parent[] renders the parent[] unfit, unable, or unwilling to give the child adequate parental care."  Section 41-3-609(2), MCA.  In making this determination, the court must at least consider the criteria set forth in § 41-3-609(2)(a)-(d), MCA—"(a) emotional illness, mental illness, or mental deficiency of the parent of a duration or nature as to render the parent unlikely to care for the ongoing physical, mental, and emotional needs of the child within a reasonable time; (b) a history

5

of violent behavior by the parent; (c) excessive use of intoxicating liquor or of a narcotic or dangerous drug that affects the parent's ability to care and provide for the child; and (d) present judicially ordered long-term confinement of the parent."

¶10 In this case, Mother's parental rights were terminated for failing to successfully complete her treatment plan. The District Court found Mother did not comply with the court-ordered treatment plan "and those parts of the treatment plan that have been attempted [were] largely unsuccessful." Mother faults the Department for failing to make reasonable efforts to assist her with completing her treatment plan after she moved to North Dakota.

¶11 "Although determination of whether the Department made reasonable efforts is not a separate requirement for termination, it may be a predicate for finding that the conduct or condition rendering a parent unfit, unwilling, or unable to parent is unlikely to change within a reasonable time—one of the factors required for termination of a parent's rights." *In re R.L.*, 2019 MT 267, ¶ 18, 397 Mont. 507, 452 P.3d 890 (citations omitted). "With regard to the termination of parental rights, the analysis of reasonable efforts is highly fact dependent." *In re R.L.*, ¶ 18. "[A] parent has an obligation to engage with the Department to successfully complete the treatment plan." *In re A.M.G.*, 2022 MT 175, ¶ 28, 410 Mont. 25, 517 P.3d 149 (collecting cases). We have held that the Department must make "reasonable efforts to reunite parents with their children, not herculean efforts." *In re R.L.*, ¶ 20 (citations omitted).

¶12 By the time of termination, this case had been ongoing for over three years and the District Court was very familiar with the matter. "What constitutes reasonable efforts is

not static or determined in a vacuum, but rather is dependent on the factual circumstances of each case—the totality of the circumstances—including a parent's apathy and/or disregard for the Department's attempts to engage and assist the parent." *In re R.L.*, ¶ 22. While the Department failed to request North Dakota conduct an ICPC home study when Mother moved to Stanley and the children were placed with her and J.G. for the trial visit, that failure alone does not mean the Department did not make reasonable efforts to reunify Mother and the children. When some service providers in North Dakota were unable to provide or continue services because they could not bill North Dakota Medicaid, the Department offered to pay. Both children were removed from the North Dakota home visit—first B.B.-R., then K.B. a few months later—after their behaviors worsened. With both children in Montana, both CPS Moser and her supervisor "literally begged" Mother to visit the children and offered thousands of dollars' worth of gas vouchers and hotel rooms. When Mother said her vehicle broke down, the Department arranged with family members to "drive to North Dakota and get them and bring them here" and to loan Mother a vehicle. Three years into the case, Mother remained resistant and/or apathetic to the Department's efforts to reunify her with the children.

¶13   From our review of the record, and pursuant to the applicable standard of review, we conclude the District Court's decision to terminate Mother's parental rights was not an abuse of discretion. As the court found when terminating Mother's parental rights to B.B.-R., Mother

> has demonstrated over the course of the last three years that she cannot follow through with her own mental health therapy; she has not been consistent with visitation despite the Department's efforts to subsidize the costs of travel;

7

[Mother] has failed to establish a connection with the child and does not understand the child's needs; [Mother] has demonstrated her disengagement with the children when she is overwhelmed; [Mother] admittedly lacks connection with [B.B.-R] having not raised him during his very tender years; [Mother's] incapability to consistently engage with [B.B.-R.] and his therapy; [Mother's] inability to recognize that her own actions that contributed to the removal of the child from her home on two separate occasions; and [Mother's] inability to be the proactive parent who facilitates [B.B.-R.] living in a stable home and developing in to a well-functioning person. Simply put, [Mother] cannot show up consistently and lacks the ability to follow through with her tasks.

The District Court additionally found, in its order terminating Mother's parental rights to K.B., that "[Mother] is inconsistent with getting [K.B.] to her appointments and therapy which the child desperately needs" and that Mother "is unable to provide emotional support to [K.B.]." The District Court correctly found the conduct or condition rendering Mother unfit to parent was unlikely to change within a reasonable time. For over three years, Mother failed to make consistent progress on her treatment plan, occasionally making progress before disengaging from mental health treatment and very rarely visiting the children after they returned to Montana following the failed trial home visit in North Dakota. The case had been pending for over three years and the children deserved stability and permanence, neither of which would be accomplished by dragging the case on and extending TLC yet again when Mother had repeatedly demonstrated the conduct or condition rendering her unfit to parent was unlikely to change within a reasonable time. Accordingly, the termination of Mother's parental rights was not an abuse of discretion.

¶14    We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. In the opinion of the

Court, the case presents a question controlled by settled law or by the clear application of applicable standards of review.

¶15    Affirmed.

/S/ INGRID GUSTAFSON

We Concur:

/S/ CORY J. SWANSON
/S/ LAURIE McKINNON
/S/ JAMES JEREMIAH SHEA
/S/ JIM RICE